In the Matter of JENNIFER, an Infant.

Family Court, Monroe County, February 22, 1989

APPEARANCES OF COUNSEL

*Kenneth L. Bennett* for petitioner. *Wayne F. DeHond* for natural father. *Charles Plovanich, Law Guardian.*

**OPINION OF THE COURT**

JOAN S. KOHOUT, J.

This is an adoption proceeding brought by Gary B. who is married to the child's mother, Roxanne B. Jennifer's natural father, Donald Br., has also appeared and given his consent to

the adoption upon the conditions that he continue to be permitted to visit Jennifer and provide support. All parties are represented by counsel and the court, due to the unusual circumstances of this case, appointed a Law Guardian to protect Jennifer's interests.

The court interviewed Jennifer in camera with her Law Guardian on November 23, 1988, and after several conferences with counsel, scheduled a hearing which was held on December 20, 1988 to determine whether the proposed adoption based upon the natural father's conditional consent was in Jennifer's best interest.

### LEGAL BACKGROUND

Adoptions in New York are exclusively governed by Domestic Relations Law article 7. There was no right to adoption at common law *(Matter of Robert Paul P.,* 63 NY2d 233, 237, citing *Betz v Horr,* 276 NY 83, 86-87; *Matter of Thorne,* 155 NY 140, 143). Thus, adoption is solely a creature of statute *(Matter of Eaton,* 305 NY 162, 165) and the applicable law must, therefore, be strictly construed *(Matter of Robert Paul P., supra,* at 238).

Additionally, Family Court is a court of limited jurisdiction which possesses only such authority as is specifically delegated to it by the NY Constitution and statute (NY Const, art VI, § 13; Family Ct Act § 115; *Borkowski v Borkowski,* 38 AD2d 752 [2d Dept 1972]).

The constitutional nature of the parent-child relationship provides an additional argument in favor of the strict construction of the adoption laws. It has been held that "parents who are fit to raise their children are constitutionally entitled to do so" *(Matter of Leon RR,* 48 NY2d 117, 124 [1979], citing *Stanley v Illinois,* 405 US 645, 657-658). Since adoption terminates a parent's legal rights to his or her child, due process and fundamental fairness mandate a careful adherence to statutory procedure *(see, Santosky v Kramer,* 455 US 745 [1982]).

Family Court is granted jurisdiction over visitation issues as part of its general authority to handle custody matters (Family Ct Act §§ 651, 652; *Matter of Juan R. v Necta V.,* 55 AD2d 33 [2d Dept 1976]). Only legal parents, custodians and grandparents have legal standing in New York to seek visitation. *(See,* Domestic Relations Law §§ 70, 72; *Matter of Ronald FF. v Cindy GG.,* 70 NY2d 141 [1987].) There is no statutory provision for a biological parent whose parental rights have been terminated by an adoption to petition for visitation *(cf.,*

Conn Gen Stat § 46b-59; *Michaud v Wawruck,* 209 Conn 407, 551 A2d 738 [1988]).

It is in this context that the court must consider the adoption agreement proposed by the parties. More specifically, the court must review the statutory provisions relating to private placement adoptions found in Domestic Relations Law §§ 115-117 and the ultimate effect of the adoption upon Jennifer. Finally, in order to make the necessary examination into Jennifer's best interests, the court must inquire into the sufficiency and enforceability of the natural father's consent to the adoption, as well as the long-term consequences to Jennifer if this adoption is approved.

### NATURAL FATHER'S CONSENT

This case is unusual in that the natural parents have previously executed a modification to their separation agreement, dated March 16, 1987. By that modification, the father, Donald Br., agreed to execute a consent to Jennifer's adoption by her stepfather Gary B., but continued his obligation to support and his right to "reasonable and liberal visitation." The proposed adoptive father, Gary B., is not a signatory to this agreement or modification, and is, therefore, not bound by them in any way.

It is undisputed that no adoption could occur in this case without the natural father's consent. It has not been alleged by any party that Donald Br. has abandoned Jennifer or is in any other way disqualified from being her legal parent *(cf.,* Domestic Relations Law § 111). Clearly, the conditional consent he has executed[1] fails to comply with Domestic Relations Law § 115-b, and therefore, is legally inadequate to surrender his legal rights to Jennifer.[2] *(See, e.g., People ex rel. Anony-*

---

1. The consent signed by Mr. Br. stated as follows:
"TO THE FAMILY COURT:

"I, DONALD O. BR., the natural father of Jennifer Br., consent and agree to the adoption of my daughter, Jennifer Br., by Gary B., the husband of the child's natural mother, pursuant to the terms and provisions set forth in the Modification of the Separation Agreement signed by myself and my former wife.

"s/ _____

DONALD O. BR.

"Sworn to before me this
19th day of March, 1987.

"s/ _____

NOTARY PUBLIC".

2. Domestic Relations Law § 115-b establishes the procedure for and contents of an extrajudicial surrender in private placement adoptions. The

*mous v Anonymous,* 139 AD2d 189 [3d Dept 1988].) The court presumes, however, for the purpose of this decision, based upon his testimony at the hearing, that Donald Br. would willingly execute a proper surrender as long as his consent was conditioned on the continuation of visitation and support.

Pursuant to the separation agreement as modified, Donald Br. currently pays $300 per month toward the support of Jennifer. In addition, it is agreed that Donald Br. will assist financially toward any postsecondary education of the child. It is reasonable to expect that Jennifer will continue her education beyond high school, as all of the parties are highly educated. Donald Br. currently earns $50,000 per year, and appears to be sufficiently secure financially for the court to infer that he will be able to meet future financial responsibilities toward Jennifer.

It is clear that in New York a natural parent's duty to support his child ceases upon the child's adoption (Domestic Relations Law § 117 [a]). Moreover, it is well established that it is against public policy to require postadoption support from a natural parent who has surrendered or lost his rights to his child *(Betz v Horr,* 276 NY 83 [1937], *supra; see also, Bielinski v Ungerman,* 103 AD2d 73 [1984]). Since a contract which is contrary to public policy is unenforceable *(Sternaman v Metropolitan Life Ins. Co.,* 170 NY 13, 19 [1902]), there is no assurance that Jennifer would receive support from her father after the adoption. Although Jennifer's mother and her stepfather are both employed and are well able to financially provide for her needs, the amount of support currently being paid by Mr. Br. is not insignificant, and the court cannot say that it does not enhance Jennifer's life. Furthermore, if this adoption were granted, she would lose her right under the current agreements to receive financial help from her father toward the cost of her future education.

Mr. Br. also conditions his consent on the continuation of his visitation rights. Testimony indicates that Donald Br. exercises visitation at least every other Sunday, and that Jennifer enjoys the visits. There are no reported cases in New York that indicate whether an agreement for postadoption

surrender must state that no proceeding may be maintained by the parent for custody except as outlined in the section and that the surrender becomes irrevocable in 45 days. The surrender must provide certain information concerning the manner in which the consent may be revoked and the nature of the hearing which would occur after a revocation, as well as advisements of the parent's right to an attorney and supportive counseling.

visitation is enforceable, and no clear appellate case law that gives this court authority to grant such visitation to the father as part of this adoption proceeding.

While there are a few cases in New York where postadoption visitation has been granted to natural parents, these cases all appear to have involved consensual situations where very limited visitation was directed. Often, visitation is granted based upon a court's inherent or equitable power. For example, in *Matter of Raana Beth N.* (78 Misc 2d 105 [Sur Ct, NY County 1974]), the Surrogate granted limited bimonthly visitation to a natural father as part of an order permitting adoption by the stepfather. The court in that case noted that the mother did not object to visitation *(Matter of Raana Beth N., supra,* at 108), and concluded that Surrogate's Court's broad equity jurisdiction provided a legal basis to grant postadoption visitation. The Second Department in *Matter of Abraham L.* (53 AD2d 669 [1976]) also recognized that Surrogate's Court's equitable jurisdiction would permit it to direct visitation after an adoption. *(See also, Matter of McDevitt,* 176 App Div 418 [2d Dept 1917].)

In contrast, Family Court is granted no equity jurisdiction (Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 115, at 19, 23; *Lydon v Lydon,* 110 Misc 2d 966 [Fam Ct, Onondaga County 1981]), so the reasoning in the above decisions is of limited assistance to the case at hand. Moreover, there are no reported cases which permit liberal visitation, such as is proposed here, to occur after an adoption. Although Family Courts have occasionally directed parental or sibling visits for foster children who have been freed for adoption pursuant to Social Services Law § 384-b *(Matter of Dana Marie E.,* 128 Misc 2d 1018 [Fam Ct, Queens County 1985]; *Matter of Anthony,* 113 Misc 2d 26 [Fam Ct, Bronx County 1982]; *Matter of Patricia A. W.,* 89 Misc 2d 368 [Fam Ct, Kings County 1977]), no legal authority for those visitation awards is cited by the courts. Furthermore, the Court of Appeals has yet to rule on this question, and declined to decide the issue as recently as 1985 in *Matter of Joyce T.* (65 NY2d 39, 46, n 2).

The court notes that over the past five years a number of articles have appeared in legal periodicals advocating "open adoption" and postadoption visitation for certain children. *(See, e.g.,* Amadio and Deutsch, *Open Adoption: Allowing Adopted Children to "Stay in Touch" with Blood Relatives,* 22 J Fam L 59 [1983-1984]; Note, *Visitation After Adoption: In*

*the Best Interests of the Child,* 59 NYU L Rev 633 [1984].) Despite the public discussion of this issue, the New York Legislature has not amended the law to specifically permit open adoptions. Lawmakers, however, have approved other amendments to Domestic Relations Law article 7 dealing with such matters as postadoption inheritance rights (Domestic Relations Law § 117, as amended by L 1986, ch 408, § 1; L 1987, ch 499, § 1). The court, therefore, can only conclude that the Legislature has decided not to include open adoptions in the New York statutory scheme.

Although appellate courts have yet to rule on the Family Court's authority to direct postadoption visitation, it is noteworthy that the Second Department affirmed the denial of an adoption by a stepfather because the court concluded that father-son visits were in the child's best interest and that the child would lose important financial benefits if he were adopted *(Matter of Gerald G. G.,* 61 AD2d 521 [2d Dept 1978]). Although one concern raised in *Matter of Gerald G. G. (supra)* has recently been resolved by an amendment to Domestic Relations Law § 117 (1) (e), which now allows a child adopted by a stepparent to inherit from his or her biological father, the lack of enforceable visitation and loss of support mentioned in that case continues to mitigate against adoption for some children who know their real parents.

After an examination of the nature of the father's consent, the testimony at the hearing, and the narrow wording of the New York statutes concerning adoption, the court concludes that the only legally acceptable and enforceable surrender by a parent is one that is unconditional, and that a conditional consent as proposed by the parties is not contemplated by the present adoption statutes. The court, thus, determines that even if Mr. Br.'s consent conformed with the provisions of Domestic Relations Law § 115-b, it would be contrary to the current law, and therefore, invalid. Moreover, the agreement between mother and natural father continuing his visitation and support obligations would be unenforceable after an adoption. Therefore, the petition must be denied.

### BEST INTERESTS OF JENNIFER

The court held a full evidentiary hearing to determine whether the proposed adoption would promote Jennifer's best interests. Based upon an examination of the facts and the law, the court concludes that even if the father's consent were

valid, this adoption would not benefit the child over the long term.

The parties all testified that little would change if Jennifer were not adopted. She would continue to reside with her mother and stepfather and receive their love and support. Furthermore, Jennifer has been using her stepfather's surname at school for some time, apparently with the consent of her father. Jennifer is already included in her stepfather's will and will receive the same share of his estate as will his own children.

On the other hand, Jennifer stands to lose not only her right to support and the right to legally enforceable visitation with her father, but also the right to have him available to her as a potential custodian should her mother and stepfather both die before she reaches adulthood.

Jennifer is a well-adjusted nine-year-old girl who does well in school and is comfortable having two fathers. She differentiates between her fathers by calling her natural father "Dad" and Gary B. "Poppa". No mental health professional was called as a witness by either party, nor do the parties argue that Jennifer will be adversely affected emotionally if this adoption is denied. Each party testified that he felt that the adoption would merely solidify Jennifer's already secure position in the family.

Jennifer enjoys her regular every-other-Sunday visits with her "Dad" and has a warm and loving relationship with him which should be promoted. Should visitation be interrupted for some reason, Jennifer would surely be saddened and would suffer a loss. Since this court has determined that it lacks the legal authority to order visitation for Jennifer and her father, as part of this adoption, or to accept a surrender to this adoption conditioned on visitation, the only way to assure this child legally enforceable contact with her father is to deny the petition (see, Matter of Gerald G. G., 61 AD2d 521 [2d Dept 1978], supra). Furthermore, a denial of the petition protects Jennifer's right to child support as well as financial assistance from her father for her future education.

It is significant also that the parties present no compelling evidence or justification for this adoption. If such evidence were presented, it might overcome the benefits of future parental visitation and financial aid for this child. Moreover, the concern of the parties that Gary B. get custody of Jennifer in the event of her mother's death could be addressed by the less drastic alternative of a custodial agreement.

Therefore, based upon the court's refusal to accept the natural father's conditional consent to the adoption and based upon my specific findings that the adoption may adversely affect the child, and is contrary to her best interests, the petition is denied in its entirety.