In the Matter of ALISON D., Appellant, v VIRGINIA M., Respondent.

Second Department, March 2, 1990

---

## APPEARANCES OF COUNSEL

*Beveridge & Diamond, P. C. (Paula L. Ettelbrick* of counsel), and *Lambda Legal Defense & Education Fund (Debra L. Rothberg* of counsel), for appellant. (One brief filed.)

*Anthony G. Maccarini* for respondent.

*American Civil Liberties Union Foundation (William B. Rubenstein* and *Nan D. Hunter* of counsel), and *New York Civil Liberties Union Foundation (Robert Levy* of counsel), *amici curiae.*

*Janet E. Schomer* and *Susan R. Keith* for Gay and Lesbian Parents Coalition International, Center Kids, WS, VC, KG and AR, *amici curiae.*

### OPINION OF THE COURT

Per Curiam.

The petitioner Alison D. and the respondent Virginia M. became involved in a relationship in September 1977 and began living together in March 1978. In 1980, they decided to raise a family together and agreed that the respondent would be artificially inseminated. They agreed to share jointly all rights and responsibilities for the child as "coparents". In July 1981 the respondent gave birth to a baby boy. Before, during, and after the pregnancy, the petitioner and respondent shared the household and child support expenses. During the first two years following the birth, the petitioner and the respondent jointly made decisions regarding the child. The petitioner assisted in caring for the child, transported him to school, and attended to his medical needs.

In November 1983 when the child was two years and four months old, the relationship between the petitioner and the respondent ended and the petitioner moved out of the home which they had shared prior to their separation. A visitation schedule was mutually agreed upon, whereby the petitioner saw the child a few times a week. This regular visitation continued until 1986, at which point the respondent began limiting the petitioner's visits with the child. The petitioner moved to Ireland in July 1987 for the purpose of career advancement, and, thereafter, the respondent terminated all contact between the petitioner and the child.

In the instant proceeding seeking visitation, the petitioner alleges that she stands in loco parentis to the child, and therefore must be considered a "parent" within the meaning of Domestic Relations Law § 70. Accordingly, the petitioner argues that she has standing under Domestic Relations Law § 70 to demand a hearing as to whether her visitation with the child would be in the latter's best interests.

The Supreme Court, relying on the Court of Appeals deci-

sion in *Matter of Ronald FF. v Cindy GG.* (70 NY2d 141), dismissed the petition, stating:

"the biological parent of a child is the parent within the meaning of the statute.

"The court declines to adopt the definition of a parent as someone standing in loco parentis".

We agree with the Supreme Court's determination.

Domestic Relations Law § 70 provides, *inter alia,* that "either parent" has standing to apply for a writ of habeas corpus to determine the issue of child custody. This statute has also been construed to grant standing to "either parent" to apply for a writ of habeas corpus to determine the issue of visitation rights *(see, Matter of Pierson,* 126 AD2d 729; Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C70:5, at 248). Once standing is conferred, the court determines the issues of custody and visitation based on the best interest of the child (Domestic Relations Law § 70).

Although Domestic Relations Law § 70 does not explicitly define the term "parent", we are of the view, based on applicable precedent, that the petitioner does not come within the meaning of that term.

In *Matter of Ronald FF. v Cindy GG.* (117 AD2d 332, *revd* 70 NY2d 141, *supra),* the petitioner was the male paramour of the female respondent, but was not the father of the respondent's child. The petitioner and the respondent lived together during most of the respondent's pregnancy, and for about a year after the child's birth, but eventually separated. In October 1983 upon learning of the respondent's intent to move to Texas with the child, the petitioner started a proceeding seeking visitation rights. After a hearing, the Family Court concluded that " 'in the present circumstances, it is in [the child's] best interest to continue his relationship with [petitioner] * * * by means of regular visitation' " *(Matter of Ronald FF. v Cindy GG., supra,* at 143). The Family Court, citing *Matter of Bennett v Jeffreys* (40 NY2d 543), found " 'the circumstances in the instant case sufficiently extraordinary to warrant consideration of petitioner's request for visitation in light of the child's best interests despite petitioner's lack of paternal ties' " *(Matter of Ronald FF. v Cindy GG., supra,* at 143).

The Appellate Division, Third Department *(Matter of Ronald FF. v Cindy GG.,* 117 AD2d 332, 333-334, *supra),* affirmed

the Family Court's holding granting the petitioner visitation rights, stating: "Child custody disputes between a parent and nonparent are to be resolved in accordance with the principles announced in *Matter of Bennett v Jeffreys* (40 NY2d 543), which permits intrusion upon parental control provided it is first demonstrated that extraordinary circumstances drastically affecting the welfare of the child exist. If that prerequisite is satisfied, courts may then proceed to a consideration of the best interest of the child *(supra,* at p 549; *see, Matter of Merritt v Way,* 58 NY2d 850, 853; *Matter of Callahan v Denton,* 114 AD2d 663, 664).* Family Court found the threshold criteria met by evidence that respondent's conduct encouraged and condoned the father-son relationship which developed between petitioner and Chad. It is noteworthy in this regard that the parties cohabited during many months of the infant's first two years; that respondent held petitioner out as Chad's father to their friends and relatives; that Chad calls petitioner 'daddy'; that petitioner selected the infant's first name and petitioner's surname is listed on Chad's birth certificate; and that petitioner's association with the infant has been constant and devoted. The record amply supports the conclusion that the familial relationship and attachment between Chad and petitioner, his nonbiological father, is an extraordinary circumstance warranting inquiry into the infant's best interest *(see, Matter of Boyles v Boyles,* 95 AD2d 95)."

The Court of Appeals reversed and held that the petitioner's habeas corpus proceeding seeking visitation rights had to be denied "in toto" *(Matter of Ronald FF. v Cindy GG.,* 70 NY2d 141, 145, *supra).* In so holding, the Court of Appeals stated *(Matter of Ronald FF. v Cindy GG., supra,* at 142, 144-145):

"Visitation rights may not be granted on the authority of the *Matter of Bennett v Jeffreys* (40 NY2d 543) extraordinary circumstances rule, to a biological stranger where the child * * * is properly in the custody of his mother. * * * Respondent is conceded to be a fit mother, a conclusion supported by the evidence before the lower courts, and she has chosen to resist the legal effort to judicially confer visitation rights on petitioner. Under these key premises, the *Bennett* rule is inapplicable and unavailable. Nothing in this record establishes any basis for interfering with the mother's full custodial rights, which include the right to determine who may or may not associate with her child. * * *

"In this case, no one questions the mother's fitness to raise her child and no one seeks to change custody. Thus, the

*Bennett* rule has no application to the situation before us, and our inquiry is directed solely to the State's power to interfere with the right of this mother to choose those with whom her child associates. The State may not interfere with that fundamental right unless it shows some compelling State purpose which furthers the child's best interests *(see, Stanley v Illinois,* 405 US 645, 651). No such compelling purposes are present in this case".

It is true, as the dissent suggests, that the petitioner's argument in *Matter of Ronald FF. v Cindy GG. (supra),* which was rejected by the Court of Appeals, and the argument of the petitioner in the instant proceeding have different labels, to wit, the petitioner in *Matter of Ronald FF. v Cindy GG. (supra),* relied on the doctrine of "extraordinary circumstances" while the petitioner in the instant case relies on the doctrine of "in loco parentis". Nevertheless, it is readily apparent from a close analysis of these two arguments that they do not, in their factual underpinnings, or legal analyses differ in any material way. Accordingly, the petitioner's theory in the instant proceeding must also be rejected *(see, Matter of Ronald FF. v Cindy GG., supra; see also, Matter of Jennifer,* 142 Misc 2d 912, 913; *cf., Matter of Dehar v Dehar,* 134 AD2d 656).

The dissent relies heavily on the holding of Court of Appeals in *Braschi v Stahl Assocs. Co.* (74 NY2d 201) for its conclusion that the petitioner should be considered a "parent" and be afforded standing in the instant proceeding. This reliance is totally misplaced. In *Braschi v Stahl Assocs. Co. (supra),* Braschi was living with his homosexual lover Blanchard, in a rent-controlled apartment in Manhattan, from the summer of 1975 until Blanchard's death in September 1986. The owner of the apartment building attempted to evict Braschi on the ground that he was a mere licensee with no right to occupy the apartment, since only Blanchard was the tenant of record. In resolving this dispute over tenancy rights to a rent-controlled apartment, the Court of Appeals merely held that Braschi could be considered a member of the deceased tenant's "family", and thereby seek protection from eviction under New York City Rent and Eviction Regulations at 9 NYCRR 2204.6 (d). The underlying circumstances in *Braschi v Stahl Assocs. Co. (supra),* including the definition of the word "family" used in the regulations, are totally inapposite to those at bar.

The other New York authorities relied on by the petitioner

and the *amici curiae* do not mandate a contrary result since they either (1) predate the holding of the Court of Appeals in *Matter of Ronald FF. v Cindy GG. (supra; see, e.g., Matter of Taylor v Alger,* 129 Misc 2d 1054; *Matter of Trapp v Trapp,* 126 Misc 2d 30), or (2) involve situations where the Legislature has specifically granted visitation rights to parties other than biological parents *(see,* Domestic Relations Law § 72, granting natural grandparents standing to petition for visitation; *see also, Matter of Anthony L. v Seymour S.,* 128 Misc 2d 1037; *cf.,* Domestic Relations Law § 73). Accordingly, any change in this area of the law must come from the Legislature, and not the courts.

We do not, by virtue of our determination on this issue, minimize, in any way, the close and loving relationship that the petitioner has apparently developed with the child. Indeed, had the petitioner come within the meaning of the term "parent" contained in Domestic Relations Law § 70, her claim for visitation would have been worthy of serious consideration.

We have reviewed the constitutional arguments addressed in the briefs by the *amici curiae* and find them to be unpreserved for appellate review. The argument raised by petitioner relating to equitable estoppel is without merit. Accordingly, the order appealed from is affirmed.

KOOPER, J. (dissenting). Although my colleagues have held otherwise, I am unprepared to conclude that the petitioner lacks standing to press her claim for visitation. I must, therefore, dissent and cast my vote in favor of reversal. The factors upon which I base my conclusion in favor of standing are twofold: (1) the need to consider the best interests of the child despite the absence of legal or biological parentage, and (2) a realistic appraisal of the term "parent" within the context of the circumstances presented. The majority, it seems to me, declines to consider the former and too narrowly construes the latter. In my view, where the petitioner has alleged without dispute that she and the respondent lived together as a family unit, planned the respondent's pregnancy by artificial insemination, and agreed to participate equally in the support and rearing of the child as "coparents", the petitioner has established that she possesses standing to seek visitation, despite the absence of a legal or biological relationship to the child.

The majority's holding to the contrary rests upon a narrow application of the term "parent" which is inconsistent with relevant holdings of other jurisdictions and with the progres-

sive and realistic definition of the term "family" recently adopted by the Court of Appeals in *Braschi v Stahl Assocs. Co.* (74 NY2d 201). Moreover, by terminating its inquiry into the petitioner's application upon a finding that she is not legally or biologically related to the child, the majority's holding would uniformly preclude any substantive consideration of the child's interests in the continuation of the relationship, no matter how close or deeply emotional the bond may be. Although the majority notes that the petitioner lived with the child for only two years, its holding would have been no different if she had resided with him as a "coparent" for 10 years: the courthouse door would still be closed. I am unable to subscribe to such a holding. A review of the relevant case law both in this jurisdiction and others, buttresses my conclusion.

It need hardly be emphasized that when the courts become involved in family matters concerning relationships between parent and child, simplistic analysis and the strict application of absolute legal principles should be avoided. The governing criterion, as always, is the best interests of the child. Accordingly, in construing the statutory term "parent", the court must strive to avoid rigid analysis and temper its inquiry by considering the best interests of the child under the circumstances presented. A review of the Court of Appeals holding in the *Braschi* case is instructive insofar as the interpretation of the term "parent" is concerned.

In the *Braschi v Stahl Assocs. Co. (supra,* at 211), the Court of Appeals concluded that "the term family, as used in 9 NYCRR 2204.6 (d), should not be rigidly restricted to those people who have formalized their relationship by obtaining, for instance, a marriage certificate or an adoption order". Accordingly, the lifetime companion of the tenant of record was held to be a member of the tenant's "family" for the purposes of the New York City Rent and Eviction Regulations. While concededly *Braschi* did not involve issues relating to visitation, it is significant that, in examining the term "family", the Court of Appeals eschewed reliance upon what it described as "fictitous legal distinctions or genetic history", and instead, chose to rest its holding on the "reality of family life" *(Braschi v Stahl Assocs. Co., supra,* at 211). In this respect, the court observed that "a more realistic, and certainly equally valid, view of a family includes two adult lifetime partners whose relationship is long term and characterized by an emotional and financial commitment and inter-

dependence", and found that the foregoing definition comported "both with our society's traditional concept of 'family' and with the expectations of individuals who live in such nuclear units" *(Braschi v Stahl Assocs. Co., supra,* at 211).

The allegations in the petition herein indicate that the petitioner and respondent intended to create—and did create, to the extent possible under the circumstances—a family unit possessing the very same elements of cohesiveness and interdependence identified by the Court of Appeals as comporting with "our society's traditional concept of 'family' " *(Braschi v Stahl Assocs. Co., supra,* at 211). I see no reason why the term "parent" cannot be subjected to similar construction, i.e., analyzed by looking beyond "fictitious legal distinctions" and "genetic history" in favor of a frank inquiry into the realities of the relationship involved. If the policy considerations presented in *Braschi* necessitated a reexamination of so traditional and sacrosanct a concept as the American family, then surely, the compelling circumstances presented at bar mandate, at the very least, a similarly enlightened construction of the term "parent". Indeed, as compared to *Braschi,* granting the petitioner standing would appear to constitute less of a departure from traditionally held conceptions concerning familial relationships, since there already exists ample authority in other jurisdictions supporting an award of visitation to an individual, who, though lacking a biological or legal relationship, nevertheless stands in loco parentis to the child.

More importantly, since a liberal construction of the term "parent" may further the best interests of the child, such an inquiry should not be automatically foreclosed because of the lack of a biological or formal legal relationship. Indeed, crediting the allegations of the petitioner, the majority's holding could well prove detrimental to the child, since it authorizes the abrupt termination of any and all contact with a person whom the child recognizes as a parent, no matter how compelling the realities favoring continuation of the relationship might be. Clearly, a child's love for, and attachment to, a person who has assumed the role of parent, is no less merely because that person is not biologically related to the child. Further, there is little question that visitation is not intended for the sole benefit of the adult visitor, but serves an equally important function in furthering the emotional well-being of the child *(see, Weiss v Weiss,* 52 NY2d 170, 175; *Matter of Thomas S. v Kathleen Z.,* 149 AD2d 599). Indeed, the respondent herself apparently recognized the benefits to be derived

by permitting the relationship between the petitioner and the child to continue, since she initially agreed to allow visitation by the petitioner to take place.

Although, to be sure, a parent's right to determine with whom a child may associate is superior to that of all others *(see, Matter of Ronald FF. v Cindy GG.,* 70 NY2d 141), that right is by no means absolute. Parental rights are not akin to property rights, but rather, may be aptly analogized to a trust over which the courts exercise their authority, albeit reluctantly, to intervene when the best interests of the child so require. This is such a case. Here, the petitioner, while not biologically related to the child, has alleged that with the prior consent of the biological mother, she assumed the status of parent, and through the faithful performance of parental duties, established an emotional bond with the child. Under those circumstances, the court should not hesitate to inquire into the relationship between the child and the petitioner in order to determine whether continued visitation will further his best interests.

Nor is the absence of explicit statutory authority permitting visitation an insurmountable obstacle to a substantive consideration of the petitioner's assertion of visitation rights. Courts in other jurisdictions have considered, *inter alia,* the doctrine of in loco parentis in conferring standing to seek visitation upon individuals such as stepparents who are "biological strangers" to the child in question, despite the absence of clear statutory authority *(see, e.g., Spells v Spells,* 250 Pa Super 168, 378 A2d 879, 881 [nonparent "may not be denied the right to (visitation) * * * merely because of * * * lack of a blood relationship]; *Collins v Gilbreath,* 403 NE2d 921, 922-923 [Ind App] [visitation awarded to stepfather despite award of custody made to natural father]; *Atkinson v Atkinson,* 160 Mich App 601, 408 NW2d 516, 520 ["a person who is not the biological father of a child may be considered a parent when he desires such recognition and is willing to support the child as well as wants the reciprocal rights of custody or visitation afforded to a parent"]; *Bryan v Bryan,* 132 Ariz 353, 645 P2d 1267, 1272-1273 [stepparent who stands in loco parentis to stepchild qualifies as a "parent" under statute authorizing "a parent" to commence custody proceedings]; *Gribble v Gribble,* 583 P2d 64, 66 [Utah] ["relationships beyond those of parent-child may be important enough to protect vis-à-vis visitation"]; *Looper v McManus,* 581 P2d 487, 488 [Okla] [court granted visitation to nonparent in order to achieve "a wholesome

contribution to the child's emotional well-being by permitting partial continuation of an earlier established close relationship"]; *Wills v Wills,* 399 So 2d 1130, 1131 [Fla] [visitation by nonparent permissible if it can be demonstrated that visitation is in best interests of child]; *Carter v Brodrick,* 644 P2d 850, 855 [Alaska] [despite absence of explicit statutory authority court found that "legislature anticipated and granted the court jurisdiction to determine the custody and visitation (rights) of a child in a variety of situations where biological parentage is not a determinative factor of jurisdiction"]; *Simpson v Simpson,* 586 SW2d 33, 35 [Ky] [although relevant statutes did not specifically authorize visitation rights for nonparents, such rights "should be granted to a parent or person standing in loco parentis to a child * * * when it is in the best interest of a child to do so"]).

A review of the foregoing authorities discloses that the significant question is not necessarily the biological or legal relationship which may or may not exist, but rather the underlying nature of the relationship between the child and the individual seeking visitation. There is no doubt that the undisputed allegations contained in the petition herein establish at the very least, a threshold issue with respect to the petitioner's status as a person in loco parentis to the child. Certainly, to describe the petitioner as "stranger" under the circumstances presented neither accords with reality nor furthers the best interests of the child.

The majority's reliance upon *Matter of Ronald FF. v Cindy GG.* (70 NY2d 141, *supra)* as dispositive under the circumstances presented is misplaced. Although that case does contain the language highlighted by the majority characterizing the boyfriend seeking visitation as a "biological stranger" to the child *(Matter of Ronald FF. v Cindy GG., supra,* at 142), the court's holding is limited and by no means compels the result reached by the majority. Indeed, a reading of the narrowly cast opinion reveals that the court's singular objective in reviewing the holding of the Appellate Division, Third Department, was merely to correct a misapplication of "extraordinary circumstances" doctrine enunciated in *Matter of Bennett v Jeffreys* (40 NY2d 543) to a case involving only the issue of visitation.

In summarizing the holding of the case, Judge Bellacosa framed the issue by pointedly declaring that "[v]isitation rights may not be granted on the authority of the *Matter of Bennett v Jeffreys* (40 NY2d 543) extraordinary circumstances

rule" *(Matter of Ronald FF. v Cindy GG., supra,* at 142). The court did not purport to address the viability of any other legal theory pertaining to the assertion of visitation rights. In any event, the relevant facts in *Ronald FF.* differ materially from those presented here. While the boyfriend in *Ronald FF.* was concededly alleging a psychological bond with the child resembling that which is alleged to exist at bar, there was no evidence that the parties in *Ronald FF.* consciously endeavored to bring about the mother's pregnancy based upon a prior agreement that the boyfriend would participate equally in the support and rearing of the child as coparent. Accordingly, the court's holding in *Ronald FF.* is both analytically and factually distinguishable, and thus cannot be invoked as a dispositive precedent.

In light of the foregoing, I would hold that the existence of a parental relationship, taken together with compelling evidence that the best interests of the child will be served by allowing a continuation of that relationship, is sufficient to support a limited intrusion upon the presumptive right of the natural parent to uninterrupted custody *(cf., Matter of Ronald FF. v Cindy GG., supra).* At the very least, where the foregoing factors are alleged to exist, as they are here, a substantive review of the merits of the allegations is warranted. As to the assertion that such a holding would open the door to a potentially limitless series of applications, I am confident that the trial courts, in the sound exercise of their discretion, will not lightly infringe upon the favored rights of a natural parent and that a searching inquiry into the best interests of the child will forestall any unwarranted interference with that relationship. Accordingly, I vote to reverse the judgment appealed from and to reinstate the petition.

MOLLEN, P. J., MANGANO and KUNZEMAN, JJ., concur; KOOPER, J., dissents in an opinion.

Ordered that the judgment is affirmed, without costs or disbursements.