■ In the Matter of ESTRELLITA ARRIAGA, Respondent, v JENNIFER L. DUKOFF, Appellant. [999 NYS2d 504]—

Appeal from an order of the Family Court, Suffolk County (Theresa Whelan, J.), dated September 11, 2013. The order, insofar as appealed from, granted Estrellita Arriaga's petition to the extent of awarding her visitation with the subject child.

Ordered that the order is affirmed insofar as appealed from, without costs or disbursements.

Estrellita Arriaga and Jennifer L. Dukoff were involved in a romantic relationship and began living together in December 2003. They registered as domestic partners in 2007, and thereafter decided to have a child through artificial insemination, using an anonymous sperm donor. Dukoff became pregnant in February 2008 and gave birth to a daughter (hereinafter the child) in November 2008. Arriaga was present during the insemination procedure and the birth of the child. Dukoff and Arriaga shared in the responsibilities of taking care of the child, and they agreed she would call Dukoff "mommy" and Arriaga "mama." However, Arriaga never adopted the child.

Dukoff and Arriaga ended their romantic relationship in May 2012, and Arriaga moved out of their home in September 2012, when the child was almost four years old. After Arriaga moved out, she continued visiting with the child several days a week.

In October 2012, Dukoff filed a petition in the Family Court

seeking child support from Arriaga. Following a hearing on the issue of equitable estoppel, the Family Court issued an order dated January 16, 2013, wherein it determined that "the uncontroverted facts establish" that Arriaga "is a parent to [the child]; and as such is chargeable with the support of the child."

During the pendency of the support proceeding, Arriaga commenced this proceeding pursuant to Family Court Act article 6 seeking custody or visitation. After the Family Court issued the January 16, 2013, order in the support proceeding, Arriaga filed an amended petition in this proceeding, asserting that she had been adjudicated a parent of the child in the support proceeding and was therefore seeking custody or visitation as the child's "adjudicated parent." She did not dispute that Dukoff was a fit parent. Dukoff moved to dismiss the petition on the ground that Arriaga did not have standing under Domestic Relations Law § 70 to commence such a proceeding, since she was not a biological or adoptive parent of the child.

In an order dated April 2, 2013, the Family Court denied Dukoff's motion on the ground that Dukoff was judicially estopped from arguing in this proceeding that Arriaga was not a parent of the child, since she had asserted in the support proceeding that Arriaga was a parent of the child, and had secured a child support award on that basis (*see Estrellita A. v Jennifer D.*, 40 Misc 3d 219 [Fam Ct, Suffolk County 2013]). The court noted that, in colloquial terms, the relief sought by Dukoff was known as " 'having your cake and eating it too' " (*id.* at 224).

The Family Court then conducted a hearing to determine the best interests of the child. During the hearing, Arriaga indicated that she was not seeking physical custody of the child. Rather, she was seeking visitation and decision-making authority on issues related to the child's health, education, and welfare.

After the hearing, the Family Court issued an order dated September 11, 2013, granting Arriaga's petition to the extent of awarding her visitation with the child and setting forth a visitation schedule, subject to certain conditions that are not relevant to this appeal. The court directed that Dukoff shall retain legal and physical custody of the child and final decision-making authority "after thoughtful consideration of [Arriaga's] input before making a decision."

Dukoff appeals from the September 11, 2013, order. She does not challenge the Family Court's best interests finding, but argues that the court's conclusion that Arriaga had standing to commence this proceeding is contrary to the Court of Appeals'

holdings in *Debra H. v Janice R.* (14 NY3d 576 [2010]) and *Matter of Alison D. v Virginia M.* (77 NY2d 651 [1991]). We disagree with Dukoff's contentions.

Domestic Relations Law § 70 (a) provides, in part, that *"either parent* may apply to the supreme court for a writ of habeas corpus to have such minor child brought before such court; and [the court] may award the natural guardianship, charge and custody of such child to either parent . . . as the case may require" (emphasis added). This statute has also been construed to grant standing to " 'either parent' " to apply for a writ of habeas corpus to determine the issue of visitation rights (*Matter of Alison D. v Virginia M.*, 155 AD2d 11, 13 [1990], *affd* 77 NY2d 651 [1991]). In *Debra H.*, the Court of Appeals reaffirmed its holding in *Matter of Alison D.* that the term "parent" in Domestic Relations Law § 70 encompasses only the biological parent of a child or a legal parent by virtue of adoption and that a "de facto parent" or "parent by estoppel" could not seek visitation with a child who is in the custody of a fit parent (*Debra H. v Janice R.*, 14 NY3d at 590 [internal quotation marks and emphasis omitted]; *Matter of Alison D. v Virginia M.*, 77 NY2d at 656 [internal quotation marks omitted]). In *Debra H.*, however, the Court analyzed the significance of the civil union the parties had entered into in Vermont prior to the child's birth. The Court determined that, under Vermont law, a child born during a civil union was a child of both partners. Thus, it concluded, Debra H. was the child's parent under Vermont law. As a matter of comity, the Court recognized her as the child's parent under New York law as well, thereby conferring standing for her to seek visitation and custody at a best interests hearing (*see Debra H. v Janice R.*, 14 NY3d at 601).

The Court of Appeals noted that recognizing Debra H. as a parent did not conflict with the public policy of New York and would not "undermine the certainty that *Alison D.* promises biological and adoptive parents and their children," since "whether there has been a civil union in Vermont is as determinable as whether there has been a second-parent adoption. And both civil union and adoption require the biological or adoptive parent's legal consent, as opposed to the indeterminate implied consent featured in the various tests proposed to establish de facto or functional parentage" (*Debra H. v Janice R.*, 14 NY3d at 600-601). At the heart of the Court's reasoning in *Debra H.* was a desire to provide a bright-line rule affording certainty and predictability to parents and children. The Court expressed concern that an equitable estoppel hearing would create protracted litigation on the issue of standing.

In this proceeding, Arriaga asserts that she has standing as a parent of the child pursuant to the doctrine of judicial estoppel. Under that doctrine, " 'a party who assumes a certain position in a prior legal proceeding and secures a favorable judgment therein is precluded from assuming a contrary position in another action simply because his or her interests have changed' " (*Barker v Amorini*, 121 AD3d 823, 824 [2014], quoting *GECMC 2007-C1 Burnett St., LLC v Hoti Enters., L.P.*, 115 AD3d 642, 643 [2014]; *see Matter of Mukuralinda v Kingombe*, 100 AD3d 1431, 1432 [2012]; *Bono v Cucinella*, 298 AD2d 483, 484 [2002]; *Anonymous v Anonymous*, 137 AD2d 739, 741 [1988]).

The concerns expressed by the Court of Appeals in *Debra H.* are not implicated in the present case, where Arriaga invoked the doctrine of judicial estoppel, not equitable estoppel. No hearing was required to decide whether the doctrine of judicial estoppel applies in this case, nor did the determination involve a "complicated" or "nonobjective test" (*Debra H. v Janice R.*, 14 NY3d at 594). Just as in *Debra H.*, whether Arriaga was adjudicated a parent of the child was "as determinable as whether there has been a second-parent adoption" (*id.* at 600).

Moreover, just as in second-parent adoptions, the adjudication of Arriaga as a parent of the child required the biological mother's affirmative legal consent, "as opposed to the indeterminate implied consent featured in the various tests proposed to establish de facto or functional parentage" (*id.* at 600-601). Indeed, here, Dukoff was the party who sought to have Arriaga adjudicated a parent. Although Dukoff did not consent to adjudicating Arriaga a parent of the child for the purposes of visitation rights, the biological mother in *Debra H.* also did not do so. In *Debra H.*, the biological mother argued that she entered into the legal union in Vermont believing that it was of no legal significance in New York (*see id.* at 600).

Dukoff emphasizes that the Court of Appeals stated in *Debra H.* that it saw "no inconsistency in applying equitable estoppel to determine filiation for purposes of support, but not to create standing when visitation and custody are sought" (*id.* at 593). However, here, the Family Court did not rely on equitable estoppel to establish standing. It relied on the doctrine of judicial estoppel, which, for the reasons discussed above, differs from establishing parentage by equitable estoppel.

Dukoff further asserts that the Family Court erred in allowing Arriaga to benefit from the doctrine of judicial estoppel while precluding Dukoff from invoking the same doctrine based on the position taken by Arriaga in the support proceeding. However, the doctrine of judicial estoppel is not applicable to

Arriaga because she did not obtain a favorable judgment in the support proceeding (*see Matter of A.F. v K.H.*, 121 AD3d 683 [2014]).

Accordingly, the Family Court properly denied Dukoff's motion to dismiss the petition. Rivera, J.P., Roman, Duffy and Barros, JJ., concur.