[Civ. No. 10083. First Appellate District, Division One.—April 27, 1936.]

In the Matter of the Estate of KATHERINE C. HENDERSON, Deceased. WALTER H. LINFORTH et al., as Testamentary Trustees, etc., Appellants, v. AGNES HIHN YOUNGER, Respondent.

Jesse H. Miller for Appellants.

Donald Younger and Frederic C. Benner for Respondent.

THE COURT.—This appeal involves the question of judicial power to enforce testamentary directions as to the place and manner of burial of a decedent's remains as against the contrary wishes of a sole surviving sister, who is the next of kin.

The facts out of which the controversy arises are as follows: The testatrix, Mrs. Katherine C. Henderson, a widow, died testate on March 12, 1921, leaving an estate in excess of the value of $390,000. She was one of several surviving children of Mr. and Mrs. F. A. Hihn, pioneer settlers of Santa Cruz. Her husband, H. O. Henderson, and her only child, as well as all of her brothers and sisters, except Mrs. Agnes Hihn Younger, predeceased her, so that at the time of her death her next of kin was Mrs. Younger, the sole surviving sister. Her other heirs at law were certain nieces and nephews. Three of them were Mrs. Younger's children, and among the others were Ruth Ready, the sole child of a predeceased sister, and Teresa Hihn, the child of a predeceased brother. These five nieces and nephews were named as residuary legatees under the will. The remains of all members of the Hihn family (except one, the mother of Ruth Ready), and the bodies of Mrs. Henderson's infant child and her husband, were interred in the F. A. Hihn burial plot in the Odd Fellows' Cemetery in Santa Cruz. The remains of Ruth Ready's mother were buried in the Catholic Cemetery in that city. Mrs. Hender-

son's remains were also interred in the Hihn burial plot in the Odd Fellows' Cemetery, but by the twelfth clause of her will she provided as follows: ''I give and bequeath to Walter H. Linforth of San Mateo County, California, the sum of twenty thousand ($20,000) dollars in trust for the following purposes, to-wit: Said sum or so much thereof as may be necessary to be used for the purchase of a plot at the Cypress Lawn Cemetery and the building of a suitable vault thereon wherein the remains of my late husband, H. O. Henderson, my son, Fred Hihn Cope, and myself shall be placed. The remains of my said husband and my said son are now in the cemetery at Santa Cruz, and I request my said trustee, upon the completion of said vault to cause the remains of the persons above mentioned to be removed from said cemetery at Santa Cruz and placed in the aforesaid vault. It is also my wish that the remains of my father and mother now at said cemetery at Santa Cruz be also removed and placed in said vault, and I request my said trustee to use his best endeavors in bringing about such result. Whatever may be left of said fund of twenty thousand ($20,000) dollars shall form part of the residue of my estate and be distributed in accordance with the provisions herein contained.'' In this latter respect the will provided that the said residue should be divided as follows: 35 per cent thereof to Mrs. Younger's three children, 15 per cent to Teresa Hihn, and 50 per cent to Ruth Ready.

There was no contest to the probate of the will, and on August 11, 1923, final distribution of the estate was granted. In accordance with the clause above quoted the sum of $20,000 was distributed in trust for the purposes set forth in said clause to the trustee therein named and to the Union Trust Company of San Francisco, which, at the request of the nominated trustee, was appointed to act jointly with him in carrying out the purposes of the trust. No appeal was taken from said decree, but after it became final Mrs. Younger refused to give her consent to the removal of the remains of her father and mother to the proposed mausoleum in San Mateo County, and finally at the end of ten years during which the trustees continued their efforts to effect an amicable arrangement with Mrs. Younger whereby the wishes of the testatrix might be carried out, Mrs. Younger objected also to the removal of the remains of the testatrix; whereupon the trustee petitioned

the superior court for instructions as to further action in reference to carrying out the provisions of the twelfth clause of the will. Mrs. Younger appeared and testified in opposition to the granting of any relief under the petition. In this regard she stated that the Hihn fortune had been acquired in Santa Cruz County, that with the exception of herself all of the Hihn children had resided there from birth until death, and that for those and sentimental reasons she objected to the removal of the remains of the testatrix as well as those of her father and mother. She further stated that the testatrix had told her in contradiction of the terms of the will that she wished to be buried in Santa Cruz, but that the clause in the will providing for the erection of the mausoleum in San Mateo County had been suggested by her attorney. The latter, however, denied ever having made any such suggestion.

The trial court's decision in the matter, from which this appeal has been taken by the trustees, embodies a written opinion theretofore filed by the court setting forth its findings and conclusions. The opinion reads as follows: "In view of the refusal of Mrs. Younger, as surviving next of kin of the deceased, to permit the removal of deceased's body from Santa Cruz I have been reluctantly forced to the conclusion that under *Enos* v. *Snyder,* 131 Cal. 68 [63 Pac. 170, 82 Am. St. Rep. 330, 52 L. R. A. 221], the testamentary trust for burial cannot be carried out. I must therefore direct the trustees to pay the trust funds to the persons and in the proportions provided, in the clause of the decree of distribution creating the trust, for the payment of any residue remaining. I have no sympathy with the rule announced in *Enos* v. *Snyder.* I feel strongly that a testator's wishes for the disposition of his body expressed in his will should be carried out. But the reasoning adopted by the Supreme Court in deciding the Enos case is so sweeping that I cannot undertake to distinguish it. But while I may feel bound by that decision the Supreme Court need not, and I strongly recommend to the trustees that they take an appeal in an attempt to carry out the wishes of the testatrix. (*Estate of Duffill,* 188 Cal. 536 [206 Pac. 42]; *Estate of Gartenlaub,* 185 Cal. 648 [198 Pac. 209, 16 A. L. R. 520].) This is one case in which I would welcome a reversal." And in accordance with said written opinion, the trust fund was ordered distributed as

part of the residue of the estate, to wit, 50 per cent to Ruth Ready, 15 per cent to Teresa Hihn, and the remaining 35 per cent to Mrs. Younger's children.

We are unable to agree with the trial court's conclusion that the decision in *Enos* v.. *Snyder, supra,* is controlling in the present situation, first, because said decision is based upon facts essentially different from those of the case here presented. There the testator was survived by a widow with whom he had not lived for several years immediately preceding his death. During that time he resided at the house of a Mrs. Snyder, who was in no way related to him; and he died in her home. By his last will the testator directed that the time, place and manner of burial of his body should be "according to the wishes and directions" of Mrs. Snyder. It will be seen, therefore, that unlike the present case the testator there did not in the slightest way intimate in his will what his wishes were as to the place and manner of burial of his remains, but he attempted to delegate these matters to a non-relative; and it was held that as between the wishes of his widow and those of Mrs. Snyder, the wishes of the widow were paramount.

Secondly, the "sweeping reasoning" adopted in that case, which is referred to by the trial court and upon which it based its decision, is clearly *dictum,* the effect of which is that in no case may the testamentary wishes of a decedent as to the manner and place of his burial be judicially enforced as against the contrary wishes of the next of kin, however remote the relationship may be; and such *dictum,* as shown by said decision, is based upon the strict, ancient English doctrine that there can be no property in a dead body (*Williams* v. *Williams,* L. R. 20 Ch. Div. 659); whereas, as will hereinafter be shown, the great weight of authority in this country is to the effect that so far as burial purposes are concerned, a person does possess certain elements of proprietary interest in his body, sufficient to enable him to make valid directions as to the place and manner of interment, which directions, if they be reasonable and appropriate, may be judicially enforced. It was expressly so declared in this state in the case of *O'Donnell* v. *Slack,* 123 Cal. 285 [55 Pac. 906, 43 L. R. A. 388], wherein the Supreme Court said that although the body of one whose estate is in probate unquestionably forms no part of the property of the estate, it "is

recognized that the individual has a sufficient proprietary interest in his own body after his death to be able to make valid and binding testamentary disposition of it'', and that the ''court in probate and the personal representative acquire jurisdiction from the last testament to see that its provisions in this regard, as in all others, are duly executed . . . '' In other words, as stated by the author of the opinion in the leading case of *Pettigrew* v. *Pettigrew*, 207 Pa. 313 [56 Atl. 878, 99 Am. St. Rep. 795, 64 L. R. A. 179], ''It is commonly said, being repeated from the early cases in England, where the whole matter of burials was under the jurisdiction of the ecclesiastical courts, that there can be no property in a corpse. But, inasmuch as there is a legally recognized right of custody, control, and disposition, the essential attribute of ownership, I apprehend that it would be more accurate to say that the law recognizes property in a corpse, but property subject to a trust, and limited in its rights to such exercise as shall be in conformity with the duty out of which the rights arise. Whether, however, the rights be called 'property' or not is manifestly a question of words, rather than of substance.'' ■ And in that case and in several others of equal prominence, among them being *Wood* v. *E. R. Butterworth & Sons*, 65 Wash. 344 [118 Pac. 212], wherein many of the outstanding authorities upon the subject are reviewed and discussed, it is forcefully pointed out that the clear trend of American authority is contrary to the strict, ancient English rule, and that it is now held universally in this country that whenever a dispute arises as to the manner or place of burial of a body as between relatives of the deceased or some of them, and the wishes of the deceased as expressed by him in his will or otherwise, there is presented a proper subject for judicial determination, which will be decided by the courts on the merits in accordance with the principles of equity and such considerations of propriety and justice as arise out of the particular circumstances of each case; and that although such a dispute is of a nature that no hard and fast rule may be applied alike to all cases, and that consequently the court's decision should be controlled by the inherent equities of the particular case, having due regard to the interests of the public, the wishes of the deceased and the feelings of those entitled to be heard by reason of relationship or association,

nevertheless, under the generally accepted rule that a person can make a testamentary disposition of his remains, if considerations of propriety and decency do not intervene, the chancellor should give heed to the wishes of the deceased if they can be ascertained; that it always has been and will ever continue to be the duty of the courts to see to it that the expressed wishes of one as to his final resting place, shall, so far as possible, be carried out. And the following cases are cited as setting forth the principle that where there is a controversy about the matter, the wishes of the deceased person, if ascertained, should be given controlling force: 13 Cyc. 271; *In re Richardson*, 29 Misc. 367 [60 N. Y. Supp. 539]; *Matter of Bratt*, 10 Misc. 491 [32 N. Y. Supp. 168, 169]; *In re Donn*, 14 N. Y. Supp. 189; *Wilson* v. *Read*, 74 N. H. 322 [68 Atl. 37, 124 Am. St. Rep. 973, 16 L. R. A. (N. S.) 332]; *Pierce* v. *Proprietors of Cemetery*, 10 R. I. 227 [14 Am. Rep. 667]. To the same effect see *Thompson* v. *Deeds*, 93 Iowa, 228 [61 N. W. 842, 35 L. R. A. 56]; *Yome* v. *Gorman*, 242 N. Y. 395 [152 N. E. 126, 47 A. L. R. 1165]; *Sacred Heart Church* v. *Soklowski*, 159 Minn. 331 [199 N. W. 81, 33 A. L. R. 1427]; 14 L. R. A., note, p. 85; 3 Ann. Cas., note, p. 135; 8 R. C. L., sec. 7, p. 687, sec. 11, p. 690; 17 Cor. Jur. 1138.

Thirdly, the remaining ground upon which the decision in *Enos* v. *Snyder, supra,* was placed is that by penal statute existing at that time (sec. 292, Pen. Code) the duty of burying the body of a deceased person devolved upon certain relatives specified therein, which, in the Enos case, was the surviving widow; and that it was further provided in section 294 of said code that the persons charged with such duty were "entitled to the custody of such body for the purpose of burying it". These code sections have since been repealed, however (Stats. 1931, p. 2451), and under the present law (General Cemetery Act, Stats. 1931, p. 2434) no such duty of burial is imposed nor right of possession of the body given where "other directions shall have been made therefor by the deceased".

Appellants also raise the point that the objection now made by Mrs. Younger to the enforcement of the terms of the twelfth clause of said will constitutes an attack upon the validity of that clause, and that since she filed no contest to the will nor to any part thereof, and took no appeal from the

final decree of distribution, she is precluded now from making such an attack. In view, however, of the conclusion we have reached on the other branch of the case, we do not find it necessary to inquire into this latter point.

Therefore, since in our opinion the decision in *Enos* v. *Snyder, supra,* does not have the effect of denying to the trial court herein the judicial power to enforce the wishes of the testatrix as expressed by her in the twelfth clause of her will, in so far as they relate to the building of the mausoleum and the removal thereto of her remains and those of her predeceased husband and predeceased child, and inasmuch as the trial court has already determined that, if legally possible, the wishes of the testatrix in the respect above mentioned should be carried out, the decree from which the appeal herein was taken is reversed, and it is ordered that a new decree be entered whereunder the terms of said twelfth clause, in the respects above mentioned, may be appropriately executed.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 25, 1936.