In the Matter of the Estate of ESTHER SCHECK, Also Known as ESTHER SCHECK MARGULIES, Also Known as E. SCHECK, Deceased.

Surrogate's Court, Kings County, October 13, 1939.

*Miles J. Goldberg* [*Edward Olderman* of counsel], for Morris Kitzen and Morris Vulcan, as executors, etc., petitioners.

*Lawrence Krauss*, special guardian for Vera Kitzen and Louise Kitzen, infant legatees.

*Michael M. Platzman*, for Ethel Scheck, legatee.

*Julius Hahn*, for Benjamin Margulies, surviving spouse.

WINGATE, S. This proceeding presents an apparently unprecedented situation, to the legal complications of which the parties appear oblivious. The decedent died in 1936, leaving a will and two codicils which were admitted to probate in this court, and which, in addition to directing the manner of disposal of her possessions and the administration of her estate, provided that her body should be transported to Palestine and there buried. Her instructions in this regard were quite circumstantial and explicit, and provided for the expenditure of $1,200 for the purpose.

In ignorance of these directions, the children of the decedent had her remains interred in a cemetery in this State, and, according to the present account, expended a total of $189.33 in the process.

The distributees are unanimous in their wish that the remains of the decedent be left undisturbed, and have tendered four affidavits, two of which, executed by rabbis, while in certain respects somewhat equivocal, may be taken to assert that the disinterment and removal to Palestine of the body of the deceased would be contrary to Jewish tenets and to Hebrew laws.

The remaining affidavits are made by a son of the deceased and his wife, and recite that at the time of the execution of the codicils in which the questioned directions were included, the decedent was living with her second husband in Palestine and was making payments on a burial plot in that country; that she later became estranged from him, returned here, discontinued the payments and thereafter made regular payments in respect of the burial plot in which her remains have actually been interred. These affidavits further recite that during this latter period, and up to the time of her death, the decedent frequently expressed a wish to be buried in the latter plot.

For the purpose of discussion, the statements of all of these affidavits will be accepted as true, and it will be assumed that the disinterment and removal of the body of the deceased, and its reinterment in Palestine, as directed in the codicils, would be contrary to Hebrew laws and that the final, verbally expressed, wish of the testatrix was that her remains should be buried where this has taken place.

The relevancy and materiality of the statements that a compliance with the written wishes of the testatrix respecting the disposal of her remains, would be in contravention of Jewish tenets and Hebrew law, is capable of ready decision. Every faith, when honestly entertained and practiced, is entitled to respect and, as far as is compatible with local law, to recognition. The laws of this State, however, have never countenanced the possibility of *imperium in imperio*. In so far, therefore, as the customs, beliefs or individual practices of any particular race or group contravene the established law of the State, they are nugatory and incapable of effectuation. (*Chertok* v. *Chertok*, 208 App. Div. 161, 162; *Matter of Goldman*, 156 Misc. 817, 819; *Matter of Cherney*, 162 id. 764, 766; *Matter of Donn*, 14 N. Y. Supp. 189, 190, not otherwise reported.)

The observations of the court in the last cited authority are strikingly apposite to the present situation. It said: " we have persistently, constantly, and successfully thus far resisted all attempts on the part of ecclesiastical authorities or churches to usurp or control the powers and rights of the legislative or judicial departments of this country. * * * when an ecclesiastical body

assumes jurisdiction and control over a corpse its acts are of a temporal and juridical character, and not in any sense spiritual; and, under our laws and institutions, when it attempts so to do it is acting outside of its proper jurisdiction and domain."

The law of the State of New York on the subject of the right of a person to dispose of his own body has been clearly and unequivocally stated by the Legislature: " A person has the right to direct the manner in which his body shall be disposed of after his death." (Penal Law, § 2210.) The courts have repeatedly, either expressly or by implication, recognized and effectuated this right. (*Darcy* v. *Presbyterian Hospital*, 202 N. Y. 259, 262; *Hasselbach* v. *Mount Sinai Hospital*, 173 App. Div. 89, 91; *Matter of Billman*, 143 Misc. 765, 766; *Matter of Kulyk*, 150 id. 307, 310; *Apostle* v. *Pappas*, 154 id. 497, 498.)

A majority of the last group of citations related primarily to litigations concerning the respective rights of surviving relatives to custody of the body of a deceased person and the customary language in these pronouncements is that such relatives have a preferred right " in the absence of any testamentary disposition " of his body by the decedent himself.

Two questions naturally suggest themselves as a result of this frequently reiterated statement, namely, *first*, whether the authority of a person to dispose of his body is exercisable only by will; and *second*, whether if a will, as in the present case, actually makes ·directions in this regard, they are properly construable as an integral part of the testamentary document.

The implications arising from an affirmative answer to the second question are far reaching. If a direction for the disposal of the body of the testator is essentially testamentary and dispositive in character and its insertion in a will effects its integration into the composite directions of the instrument, it would apparently follow as a logical matter that, like any other testamentary direction, it would be capable of revocation only in the manner expressly specified in section 34 of the Decedent Estate Law, with the result that, when once inserted, it could be nullified only either by a total destruction of the document or by the execution of a new instrument authenticated with the formalities specified in section 21 of the Decedent Estate Law.

In evaluating this possibility, two principles appear worthy of recollection. The first is that there is no right of property in a dead body in any commercial sense (*Finley* v. *Atlantic Transport Co.*, 220 N. Y. 249, 255; *Foley* v. *Phelps*, 1 App. Div. 551, 554; *Cohen* v. *Congregation Shearith Israel*, 85 id. 65, 67; *Hutchinson Land Co., Inc.*, v. *Whitehead Bros. Co.*, 127 Misc. 558, 562; *Danahy*

v. *Kellogg,* 70 id. 25, 29; *Matter of Donn,* 14 N. Y. Supp. 189, 190, not otherwise reported), but merely a personal right (*Buchanan* v. *Buchanan,* 28 Misc. 261; see, also, *Foley* v. *Phelps,* 1 App. Div. 551, 555, 556), primarily of the decedent himself, but if not exercised by him pursuant to the authorization of section 2210 of the Penal Law, then of his surviving spouse or nearest relative.

It is well established that mere personal rights are not deemed property, and are ordinarily not subject to delegation, devolutionary direction or intestate succession. (*Matter of Ziemba,* 165 Misc. 853, 858, and authorities cited; *Flynn* v. *McDermott,* 183 N. Y. 62, 65, 66; *Camardella* v. *Schwartz,* 126 App. Div. 334, 336; *Youngs* v. *Goodman,* 240 N. Y. 470, 473; *Matter of Brown,* 212 App. Div. 677, 679; *Matter of Mihlman,* 140 Misc. 535, 537.) The personal right or privilege here in question presents no characteristics sufficient to take it out of the general rule.

It would follow as a logical conclusion that a direction in a will respecting disposal of the body of the testator is not testamentary in character to a degree which would require revocation of the direction to be accomplished in the manner prescribed in section 34 of the Decedent Estate Law. As noted, a dead body is not properly viewable as property or assets, and since time immemorial it has been the settled law in all common-law jurisdictions that a will is " the affirmative expression of intent of the testator respecting the administration and disposition of his material possessions upon his death." (5 Bacon Abr. tit. Of Wills and Testaments, (A); p. 497; *Matter of Draske,* 160 Misc. 587, 595; *Matter of Brunswick,* 143 id. 573, 580; *Matter of Hill,* 126 id. 768, 769; *Matter of Kiltz,* 125 id. 475, 485; *Matter of Davis,* 45 id. 554, 556.)

The correctness of this conclusion is additionally evident from the fact that whereas the requirement of section 21 of the Decedent Estate Law that a will must be subscribed at its end has always received strict enforcement with the result that an addition at a subsequent point, if material, has been held to void the instrument, the test of materiality, as uniformly applied, has been as to whether the writing following the subscription bore any direct relation to the disposition of the property of the testator or to the administration of his estate. If it did, the entire instrument was voided; if not, it was admissible to probate. (*Tonnele* v. *Hall,* 4 N. Y. 140, 146; *Matter of O'Neil,* 91 id. 516, 524; *Matter of Gibson,* 128 App. Div. 769, 772; *Matter of Serveira,* 205 id. 686, 690; *Matter of Crosson,* 134 Misc. 154, 155; *Matter of Tyner,* 138 id. 192, 193; *Matter of Ficken,* 143 id. 407, 409.)

It follows from this rule that if the direction for disposal of the remains of the testator followed the subscription, the document

would still be admissible to probate since it "'neither affects the disposition of the estate nor appoints executor or guardian.'" (*Matter of Gibson*, 128 App. Div. 769, 773.) In other words, it is not testamentary in character and is not in any particular, either as to initial insertion, or subsequent revocation, to be governed by the ordinary rules relating to strictly testamentary directions.

The court is accordingly in complete agreement with the dictum of Surrogate DELEHANTY in his scholarly review of the history of the right of a testator to dispose of his own body on death (*Matter of Johnson*, 169 Misc. 215, 217), that the text of section 2210 of the Penal Law according the right in this regard " imports no special formality in the directions to be given. It would seem that whether directions pursuant to this statute had been given would be a question of fact to be determined under the ordinary rules of evidence and that parol or non-formal dispositions, if proved, would be equally valid under this section as directions given by formal instruments."

An inevitable sequence of this conception is the right of a particular decedent, from time to time in his discretion, to vary the directions respecting disposal of his remains, with the result that the inquiry of the court must be directed to the ascertainment of the latest expression of wish by the testator on the subject.

Whereas, however, the question is merely one of proof, a demonstration, as in the present case, that a formal and deliberate expression has been made, raises an inference of a continuance of the indicated desire which may not lightly be overcome. Especially is this true in a situation such as is here disclosed, in which a disregard of the formally expressed wish would result in a material increase in the distributable assets of the estate with consequent financial advantage to those seeking its nullification. In the present instance this would amount to more than $1,000, since the testatrix devoted $1,200 to the effectuation of her mortuary wishes and the amount actually expended on the disposal of her remains was but $189.33.

That the primary obligation of Surrogates' Courts is to effectuate the expressed wishes of a testator in so far as this process involves no infringement of positive rules of law, is axiomatic. For this purpose, the surrogate is a virtual added party to all proceedings relating to the disposal of a decedent's assets. (*Matter of Canfield*, 165 Misc. 66, 70; *Matter of Van Valkenburgh*, 164 id. 295, 298.) It follows, in the present situation, that reversal of the formally expressed wishes of this decedent respecting disposal of her remains is permissible only upon a clear and convincing demonstration by competent and credible testimony that such was in fact her desire.

The testimony of the son and daughter-in-law is asserted to be competent since it is alleged that neither would receive any part of the sum which would be saved by leaving the remains of the decedent in their present place of interment. Whether or not the court would deem their statements credible to the extent necessary in the present situation, is incapable of decision until they have appeared in person and have testified before it, since such questions are incapable of evaluation on affidavits alone.

It follows that the issue must be set down for hearing before the court, at which time a determination will be possible as to whether the testimony of the witnesses possesses cogency and persuasiveness adequate for a rebuttal of the wish indicated by the will.

Proceed in conformity herewith.