In the Matter of NANCY KLEIN. MARTIN KLEIN, Respondent; JOHN J. BRODERICK, Appellant. (Proceeding No. 1.)

In the Matter of NANCY KLEIN. JOHN SHORT, Appellant. (Proceeding No. 2.)

Second Department, February 9, 1989

APPEARANCES OF COUNSEL

*A. Lawrence Washburn, Jr.,* for appellant in proceeding No. 1. (No brief filed.)

*Mary B. Spaulding* for appellant in proceeding No. 2.

*Sidney Schutz* for respondent in proceeding No. 1.

*Robert Abrams, Attorney-General (Elizabeth Bradford* and *Jeffrey D. Caldwell* of counsel), respondent *pro se.*

## OPINION OF THE COURT

Per Curiam.

Nancy Klein is a patient at North Shore University Hospital (hereinafter the Hospital). She has been comatose since suffering serious brain damage in an automobile accident in December 1988, and is now approximately 17 weeks pregnant with her second child. Essentially, the appeals before us concern competing applications by Martin Klein, Mrs. Klein's husband, and two strangers for the appointment of guardians for Mrs. Klein or her fetus. The ultimate purpose of these applications is to either authorize or enjoin the termination of Mrs. Klein's pregnancy. More particularly, Mr. Klein, with the consent and approval of Mrs. Klein's parents, petitioned the court to be appointed temporary guardian for the purpose of authorizing the physicians of the Hospital "to act in their discretion * * * to interrupt the pregnancy of Nancy Klein * * * and to perform such other medical and diagnostic

procedures as may be necessary to preserve * * * [her] life".
Mr. Klein joined as respondents the Attorney-General of the
State of New York, the District Attorney of Nassau County
and the Hospital. Thereafter, John Broderick and John Short,
who have no direct interest in or relationship with the Klein
family, separately petitioned the court for appointment of a
guardian or committee, Broderick for the nonviable fetus and
Short for Mrs. Klein. The hearing on Mr. Klein's petition
began on February 1, 1989, and three medical experts were
called in support thereof. They testified with respect to his
wife's condition and the risks that her pregnancy posed to her
life and health. Mr. Klein as well as his wife's parents also
testified. The District Attorney cross-examined the petitioner's
medical witnesses and called three medical experts of his own.
At the conclusion of the hearing, the court granted an applica-
tion by the District Attorney to withdraw. The Attorney-Gen-
eral and the Hospital stated that they took no position with
respect to Mr. Klein's application. The Attorney-General did,
however, state that he opposed the applications of Broderick
and Short. The Broderick and Short petitions were denied on
February 3, 1989. The Klein petition was granted on February
7, 1989, to the extent of appointing Mr. Klein as guardian of
Mrs. Klein and authorizing him, "acting in her best interest"
to, *inter alia,* "execute any required informed consent and
authorization forms for any medical, surgical and diagnostic
procedures as may be necessary to preserve [her] life" and
furthermore to "sign on her behalf any and all informed
consent and authorization forms for an abortion procedure".

■ We conclude initially that John Broderick's application
to be appointed legal guardian of the concededly nonviable
fetus was properly denied because a nonviable fetus, i.e., one
less than 24 weeks old, is not a legally recognized "person" for
the purposes of proceedings such as these *(Roe v Wade,* 410
US 113; *Byrn v New York City Health & Hosps. Corp.,* 31
NY2d 194). The State has no compelling interest in the
protection of the fetus prior to viability, since the mother's
constitutional right to privacy, which includes the right to
terminate her pregnancy, is paramount at that stage. Accord-
ingly, Broderick's application is totally without merit.

■ With respect to the issue of John Short's application for
a declaration of incompetency and the appointment of a
committee for Mrs. Klein, the issue, however, is somewhat
different. Mental Hygiene Law § 78.03 (a) provides, in perti-
nent part, that "[a]ny person may commence a special pro-

ceeding to declare a person incompetent and to appoint a committee of an incompetent". Under the literal terms of the statute, any person, whether it be a member of the incompetent's family or a stranger, may commence a proceeding under the statute. While there is no statutory provision which grants a preference to the incompetent's next of kin, blood relatives or their nominees for such appointments, nonetheless, the case law in this State has firmly established that "strangers will not be appointed as committee of the person or property of the incompetent, unless it is impossible to find within the family circle, or their nominees, one who is qualified to serve" *(Matter of Dietz,* 247 App Div 366, 367). Indeed, as stated by the Court of Appeals: " 'Considering the close and intimate relations which the committee must maintain with the family and relatives of the * * * [incompetent], a rule of practice or of positive legislation which would justify the appointment of a stranger to execute the trust of committee without the assent and against the will of his family or other relatives, and without any sufficient or adequate cause, would be oppressive and intolerable' " *(Matter of Rothman,* 263 NY 31, 33, quoting *Matter of Lamoree,* 32 Barb 122, 124-125). This not to say that a relative will never be subordinated to a stranger. The court must be guided by the best interests and welfare of the incompetent so that where the stranger can establish the existence of an adverse interest between the incompetent and his or her next of kin, relative or their nominee, the stranger may be appointed *(see, Matter of West,* 13 AD2d 599). The concept of adverse interest is readily comprehensible in the context of administering an incompetent's financial affairs. We should be guided by a similar standard, i.e., "adverse interests" in the area of supervision of the incompetent's personal needs, emotional as well as physical. In this case, we find no basis upon which to disturb the trial court's denial of Mr. Short's application for the appointment of a committee for Mrs. Klein and its appointment of Mr. Klein as guardian for his wife. We are in agreement with the trial court's determination that Mr. Short has not made a sufficient showing of an adverse interest between Mr. Klein and his comatose wife. Mr. Klein is fully capable of handling his wife's affairs and, while medical opinion may be divided, the record indicates that he intends to act with the full support of Mrs. Klein's parents in such a manner so as to enhance his wife's chances of recovery.

Ultimately, the record confirms that these absolute strang-

ers to the Klein family, whatever their motivation, have no place in the midst of this family tragedy.

MOLLEN, P. J., MANGANO, THOMPSON, BRACKEN and BROWN, JJ., concur.

Ordered that the appeal from the order made in proceeding No. 1 is dismissed, without costs or disbursements *(see, Matter of Aho,* 39 NY2d 241, 248); and it is further,

Ordered that upon review of the order made in proceeding No. 1 on the appeal from the judgment in that proceeding *(see,* CPLR 5501 [a] [1]), the order is affirmed and the appeal of John J. Broderick from the judgment is otherwise dismissed, without costs or disbursements; and it is further,

Ordered that upon the appeal of John Short the judgment in proceeding No. 1 is affirmed, without costs or disbursements; and it is further,

Ordered that the judgment in proceeding No. 2 is affirmed, without costs or disbursements.