OPINION OF THE COURT
William D. Friedmann, J.
On Friday July 23, 1993 the plaintiff, Michael Stewart (Stewart), moved this court by an "emergency” order to show *885 cause seeking, inter alia, to temporarily restrain the defendants from conducting funeral and burial services on Sunday and Monday, July 25 and 26, 1993 for Drew Harlon Stanton (Stanton). In this application, Stewart, the decedent’s gay companion, ultimately sought possession of Stanton’s remains for the purpose of preservation and burial. Pursuant to an order of this court a hearing was held on the afternoon of July 23, 1993. After hearing arguments from both counsel and the testimony of Stanton’s brother, Scott Sobel, the court issued an oral order restraining the services for, and the burial of, Stanton until July 25, 1993 when testimony from the plaintiff and other witnesses could be heard. While this matter was eventually settled amicably, the possibility of further litigation, the lack of current judicial gloss on the subject, and the timeliness of the issues involved here compelled this court to issue an opinion as a guidepost for other courts and to apprise "significant others” like the plaintiff of their rights if faced with the tragic situation which confronted this court. (See, Fashion Tanning Co. v Fulton County Elec. Contrs., 142 AD2d 465, 468-469 [3d Dept 1989].)
RELEVANT FACTS
On July 19, 1993 Drew Stanton died in a hospital in West Virginia from respiratory failure, brought on by the AIDS virus. He had been HIV positive for approximately five years. Stanton’s mother and brother, Joyce and Scott Sobel, took possession of Stanton’s remains and had the body shipped to Schwartz Brothers-Jeffer Memorial Chapel, Inc., in Queens, New York. An elaborate Orthodox Jewish funeral was planned and the cantor who barmitzvahed Stanton was to be flown in from Florida to preside over the ceremony. Stanton was ultimately to be interred at Beth David Cemetery in Elmont, New York. Despite the will being silent on the issue, the plaintiff opposed the funeral because he claimed that Stanton expressed emphatic opposition to a Jewish funeral ceremony and desired that his remains be cremated.
Stanton and Stewart, both physicians, had been lovers and companions for the previous five years. For the last two years the decedent had been immersed in the construction of a house that the two occupied prior to his death. In May of 1991, the decedent executed a will in which he left all his belongings to the plaintiff and appointed him the executor of his estate. Except for authorizing that his funeral expenses be *886 paid for out of the estate, Stanton made no mention in the will regarding the disposition of his remains.
In his affidavit the plaintiff related that Stanton was alienated from his mother and brother and that Stanton was particularly upset with his mother because she had ignored his father’s wish to be cremated and had him buried instead. The plaintiff also explained that Stanton discussed his feelings about religion and his funeral with him constantly. He stated that Stanton, shunning his Jewish heritage, became an agnostic and changed his name from Sobel to Stanton because the former was "too Jewish”. While not telling him why he rejected Judaism, the plaintiff says Stanton made it clear to him that he did not want a religious ceremony, especially one with a rabbi officiating. Rather, the plaintiff states that Stanton wished cremation and a small gathering of friends at their home. Lastly, the plaintiff stated that Scott Sobel was also aware of Stanton’s desire to be cremated.
TESTIMONY
Scott Sobel first testified that in September of 1983, the decedent had expressed to him a desire that he be buried with his father. However, he later confirmed that around 1991 the decedent had indeed expressed a wish to be cremated. Sobel stated that the statement came in the midst of a heated argument with his brother on the telephone. He said that his brother later called to apologize about the fight, but did not specifically retract the statement about cremation. When asked if there were any further discussions about the decedent’s intentions, Sobel replied that his brother only said that his arrangements were "taken care of’, "paid for”, and that he "would be notified”.
LEGAL ANALYSIS
It appeared clear that the grounds of "immediate and irreparable injury” for a temporary restraining order pursuant to CPLR 6301 were met. However, this was not the main question on this application. The court had to initially decide whether the plaintiff had standing to bring the suit at all.
The plaintiff’s position as executor of Stanton’s estate fails to give him standing for two reasons. First, the decedent’s will does not expressly designate a method of disposing of the body nor does it vest that responsibility with the executor. Second, as there is merely a personal and not a proprietary right in *887 the decedent’s body, it is not subject to delegation under the will and, therefore, not within the executor’s control. (Matter of Johnson, 169 Misc 215; see also, Finn v City of New York, 70 Misc 2d 947; Matter ofScheck, 172 Misc 236.)
Either Stanton’s surviving spouse or next of kin would have standing in this case because, absent testamentary direction to the contrary, the right to possession of a body for the purpose of preservation and burial generally belongs to these parties over all others. (Stahl v William Necker Inc., 184 App Div 85; Matter of Bower, 17 Misc 2d 936; Matter of Herskovits, 183 Misc 411.) The Court of Appeals in Braschi v Stahl Assocs. Co. (74 NY2d 201 [1989]) recognized gay relationships as familial ones in the context of New York City Rent and Eviction Regulations (9 NYCRR) § 2204.6 (d), but our courts have been reluctant to expand that decision beyond its particular context. (See, Matter of Cooper, 187 AD2d 128 [2d Dept 1993]; Matter of Alison D. v Virginia M., 155 AD2d 11 [2d Dept 1990], affd 77 NY2d 651.) Therefore, even if the plaintiff had claimed to be the surviving spouse or next of kin this court would have been hesitant to extend that status to him. Reaching a result on this particular issue, however, is unnecessary as the plaintiff did have standing as a representative of Stanton’s wishes for the disposition of his remains.
The general rule giving the right to determine the method of disposal of a decedent’s remains to the family is far from being absolute (see, Yome v Gorman, 242 NY 395, 402 [1926] ["The wishes of wife and next of kin are not always supreme and final though the body is yet unburied”]) especially in the present case where the relations between Stanton and his family were strained. (Feller v Universal Funeral Chapel, 124 NYS2d 546; see also, Matter of Eichner, 173 Misc 644.) The right of every individual to direct the disposition of their remains has clearly been recognized by the Legislature (see, Public Health Law art 43; former § 4201 [repealed L 1970, ch 466; formerly Penal Law § 2210]) and courts of this State. (Darcy v Presbyterian Hosp., 202 NY 259; Matter of Bower, 17 Misc 2d 936; In re Harlam, 57 NYS2d 103.) Where the directions are expressed in a will they are usually paramount to all other considerations, including the objections of the next of kin. (Matter of Eichner, 173 Misc 644, supra; Cooney v English, 86 Misc 292.) Parol or nonformal directions, like the ones claimed to have been made by Stanton, regarding the disposition of one’s remains have also been found to be effective (Feller v Universal Funeral Chapel, 124 NYS2d 546, supra; *888 Matter of Johnson, 169 Misc 215, supra; Matter of Scheck, 172 Misc 236, supra) and under certain circumstances those directions can be sufficient enough to override express provisions to the contrary in a will. (Matter of Scheck, 172 Misc 236.)
Public Health Law former § 4201, the statute upon which many of the aforementioned cases rely, provided that, "A person has the right to direct the manner in which his body shall be disposed of after his death.” While this statute has been repealed, this court cannot believe that the Legislature intended to abrogate one’s right to direct the disposition of their remains by repealing it and not expressly reenacting the above language into its replacement, Public Health Law article 43. Rather, it appears that section 4201 was repealed merely because of its obsolescence in the face of the adoption of the Uniform Anatomical Gift Act of 1968 under article 43, which was promulgated in an effort to unify all 50 States under one set of standards. (Uniform Anatomical Gift Act, 8A ULA 15 [1983] [amended 1987].) Therefore, in this court’s judgment the law associated with this right still exists. (See, 2 Warren’s Heaton, Surrogates’ Court § 126 [3] [b] [6th ed 1993].)
Given the emphasis placed by our courts on carrying out a decedent’s wishes and the lack of formality required in the expression of those wishes, not allowing the plaintiff standing to represent Stanton’s final wishes would not only ignore the principles enunciated to protect those wishes, but would also illustrate a callous disregard of Stanton and Stewart’s relationship. Furthermore, as there is no other family available, Stanton’s wishes will effectively be ignored merely because the plaintiff does not fit neatly into the legal definition of a spouse or next of kin. This is not to say that anyone to whom Stanton expressed his wishes would have standing, rather, in a case such as this one, the close, spousal-like relationship that existed between the plaintiff and his "significant other” and the strained nature of the relationship between Stanton and his family in the years prior to his death support the plaintiff’s standing as a representative of Stanton’s wishes. (Cf., Matter of Conroy, 138 AD2d 212, 213-214 [3d Dept 1988] [The decedent’s "short-time girlfriend”, as a representative of his wishes, had standing to oppose his family’s attempt to disinter his remains].)
The defendants’ reliance on Matter of Klein (145 AD2d 145 [2d Dept 1989], lv denied 73 NY2d 705) in his oral argument was misguided. In that case, the plaintiffs challenged the defendant’s attempt to procure an abortion for his wife who *889 was comatose after an auto accident. The Appellate Division dismissed the plaintiffs’ appeal noting that they were "absolute strangers” and had no place in that family’s tragedy. Unlike the plaintiffs in the Klein case, the plaintiff here is not merely a stranger or officious intermeddler, but was a lover and companion of the decedent for over five years. He is not acting to further his own interests, but attempting to carry out the final wishes of the person with whom he was building a future.
As to the possibility of the plaintiff’s ultimate success in this matter, the court notes that based on the evidence presented, the plaintiff would have had to overcome a significant burden to usurp the defendants’ general right to possession of the decedent’s remains. Stanton knew he was HIV positive when he drew his will, yet he failed to include a very common provision concerning his final wishes for the disposition of his remains. The plaintiff’s assertions about the importance to Stanton of a non-Jewish ceremony and cremation make his failure to include it in his will even more puzzling, especially when it’s considered that Stanton knew his mother had not honored a similar request from his father. While this is not conclusive of a desire on the decedent’s part not to be cremated, it establishes for this court that Stanton was at least uncertain about what he desired.
RESOLUTION
Before a decision could be rendered on this issue, the parties reached a resolution which this court applauds. Displaying the wisdom of King Solomon, who when confronted with two women both claiming to be the mother of a child decided that he would "Divide the living child in two, and give half to the one, and half to the other” (1 Kings 3:25), the parties agreed, inter alia, to cremate Stanton’s body and split the ashes.