693 A.2d 164

RUTH BRUNING, PLAINTIFF–RESPONDENT, v. ECKMAN FUNERAL HOME, DEFENDANT–RESPONDENT, AND DENISE HELSTOWSKI, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 19, 1997—Decided May 7, 1997.

Before Judges BAIME, P.G. LEVY and BRAITHWAITE.

*Jay G. Helt & Associates,* attorneys for appellant (*Kelly A. Erhardt,* on the brief).

*Busch and Busch,* attorneys for respondent (*Steven F. Satz,* of counsel and on the brief).

The opinion of the court was delivered by

BRAITHWAITE, J.A.D.

Defendant Denise Helstowski appeals from an order entered pursuant to *N.J.S.A.* 8A:5–18, granting plaintiff Ruth Bruning "[t]he right to control the disposition of the remains" of her deceased husband. *Ibid.* On appeal, Helstowski contends that the directive signed by the decedent three years prior to his death constituted "other directions" under *N.J.S.A.* 8A:5–18 and therefore should have controlled the disposition of his remains. The trial judge ruled that "[w]hat the legislature obviously did mean

by 'other directions' is the directions that appear typically in wills ... about one's burial," and therefore, the written directive by the decedent did not control the disposition of his remains. We disagree and now reverse and remand for further proceedings consistent with this opinion.

## I.

Plaintiff married decedent John Peter Bruning on March 26, 1939. At an unspecified point, plaintiff and decedent stopped residing together but never legally divorced. In January 1972, decedent purchased four burial plots in St. James Cemetery in Jamesburg for his family.

For at least six years before his death, decedent lived with Helstowski in Monroe. Helstowski stated that she had lived with decedent for twenty-three years. During the time that Helstowski and decedent lived together, she took care of him when he was ill and tended to his personal business affairs.

In July 1990, decedent executed a power of attorney granting Helstowski the power to execute documents and make any medical and business decisions on his behalf. Helstowski handled all of these matters for decedent. In that capacity, Helstowski deposited money in plaintiff's bank account and paid her real estate taxes, water and sewer bills, and house and car repairs.

In February 1993, decedent purchased a mausoleum in Marlboro and expressed his wish to be interred there when he died. The same month, decedent signed a directive stating that the deed to his burial plots in St. James Cemetery should be turned over to his granddaughter, Wendy Keppe. The directive further states that "[m]y final burial will be with my beloved Denise Helstowski at Rolling Hills Gardens of Marlboro." Debra Sobol witnessed decedent's signature on the document.

Decedent died on January 29, 1996. After Helstowski made funeral arrangements for decedent, plaintiff filed a complaint seeking to enjoin Helstowski and defendant Eckman Funeral

Home from making any of the arrangements. Following a hearing, the trial judge ruled that plaintiff had the right to control the disposition of decedent's remains. This appeal followed.

## II.

The statute in question, *N.J.S.A.* 8A:5–18, provides, in pertinent part, as follows:

> The right to control the disposition of the remains of a deceased person, unless *other directions* have been given by the decedent or by a court of competent jurisdiction shall be in the following order:
>
> a. The surviving spouse.
>
> . . . . . . . .
>
> A prepaid funeral agreement or a preneed funeral arrangement, as defined in [*N.J.S.A.* 45:7–82], shall not constitute "other directions" for the purposes of this section, nor shall it bind those with the right to control the disposition of the remains.
>
> [*Ibid.* (emphasis added).]

Our task is to determine what the Legislature meant when it used the words "other directions" in the statute. " 'Generally, a court's duty in construing a statute is to determine the intent of the Legislature.' " *Jacobitti v. Jacobitti,* 135 *N.J.* 571, 579, 641 *A.2d* 535 (1994)(quoting *AMN, Inc. v. Township of South Brunswick Rent Leveling Bd.,* 93 *N.J.* 518, 525, 461 *A.2d* 1138 (1983)). "In examining legislative intent, a court must first direct its inquiry to the actual language of the statute." *Schiavo v. John F. Kennedy Hosp.,* 258 *N.J.Super.* 380, 386, 609 *A.2d* 781 (App. Div.1992), *aff'd,* 131 *N.J.* 400, 620 *A.2d* 1050 (1993). Further, to ascertain the intent of the Legislature, we also look at the legislative history. *See Paramus Substantive Certification No. 47,* 249 *N.J.Super.* 1, 8, 591 *A.2d* 1345 (App.Div.1991).

The trial judge concluded that "other directions" meant those directions contained in a will. We are satisfied that "other directions" is much broader, and the legislative history supports our conclusion. We note that had the Legislature intended that the "other directions" be contained in a will, the statute would have plainly said so.

■ In 1992, the Senate bill with the proposed language to amend *N.J.S.A.* 8A:5–18 provided, in pertinent part, as follows:

The ... right to control the disposition of the remains of a deceased person ... unless other directions have been [specifically] given by the decedent [, through a will or other properly executed writing by the decedent,] or by a court of competent jurisdiction shall be in the following order.

[*Ibid.* (alteration in original).]

The underlined and bracketed language, however, was deleted in the adopted legislation. Thus, it is clear that the Legislature did not intend to limit "other directions" to those instructions only contained in "a will or other properly executed writing." We conclude that the Legislature intended that "other directions" include both testamentary and nontestamentary statements regarding the disposal of a decedent's remains. We further conclude that the nontestamentary expressions can be either oral or written. We note that this result is consistent with case law from other jurisdictions.

*In re Henderson's Estate,* 13 *Cal.App.*2d 449, 57 *P.*2d 212 (1936), a testatrix left $20,000 in trust to purchase a burial plot at a cemetery and to build a vault in which her remains would be interred, along with other pre-deceased members of her family whose remains would have to be relocated to the vault. The testatrix's sister objected and testified that the testatrix "had told her in contradiction of the terms of the will" that she wished to be buried elsewhere. *Id.* 57 *P.*2d at 213. In ruling that the testatrix's wishes, as expressed in her will, would be honored, the court stated:

[T]he great weight of authority in this country is to the effect that so far as burial purposes are concerned, a person does possess certain elements of proprietary interest in his body, sufficient to enable him to make a valid direction as to the place and manner of interment, which directions, if they be reasonable and appropriate, may be judicially enforced.... *[I]t is now held universally in this country that whenever a dispute arises as to the manner or place of burial of a body as between relatives of the deceased or some of them, and the wishes of the deceased as expressed by him in his will or otherwise, there is presented a proper subject for judicial determination, which will be decided by the courts on the merits in accordance with the principles of equity and such considerations of propriety and justice as arise out of the particular circumstances of each case;* and that although such a dispute is of a nature that no hard and fast rule may be

applied alike to all cases, and that consequently the court's decision should be controlled by the inherent equities of the particular case, having due regard to the interests of the public, the wishes of the deceased and the feelings of those entitled to be heard by reason of relationship or association, nevertheless, under the generally accepted rule that a person can make a testamentary disposition of his remains, if considerations of propriety and decency do not intervene, the chancellor should give heed to the wishes of the deceased if they can be ascertained; that it always has been and will ever continue to be the duty of the courts to see to it that the expressed wishes of one as to his final resting place, shall, so far as possible, be carried out.

[*Id.* 57 *P.*2d at 214–15 (emphasis added).]

Although the factual circumstances in *Henderson* involved a will, it is clear that the wishes of the decedent can be expressed in ways other than in a will.

*In re Scheck's Estate,* 172 *Misc.* 236, 14 *N.Y.S.2d* 946 (N.Y.Surr.Ct.1939), the decedent died with instructions in her will that her body should be transported to Palestine and buried there. She designated $1,200 in her will for that purpose. At the time, a New York statute allowed a person to direct the manner in which his or her body would be disposed of after death. The decedent's children, unaware of the directions in the will, buried decedent in New York State. The children, by affidavit, stated that decedent had expressed a wish to be buried in New York State in her later life and up to the time of her death, contrary to the terms of her will.

The court held that under the statute, "parol or nonformal dispositions, if proved, would be equally valid ... as directions given by formal instruments." *Id.* 14 *N.Y.S.*2d at 952. The court further concluded that:

An inevitable sequence of this conception is the right of a particular decedent, from time to time in his discretion, to vary the directions respecting disposal of his remains, with the result that the inquiry of the court must be directed to the ascertainment of the latest expression of wish by the testator on the subject.

[*Ibid.*]

In *Feller v. Universal Funeral Chapel, Inc.,* 124 *N.Y.S.*2d 546 (N.Y.Sup.Ct.1953), decedent died testate but left no testamentary disposition of his remains. The executors of decedent's estate sought to have his ashes placed in his grandfather's mausoleum in

accordance with decedent's orally-expressed wish. Decedent's estranged widow and their child, as next of kin, sought recognition of their right to determine the manner and place of the disposition of decedent's remains. Decedent and his wife were separated for over three years pursuant to a separation agreement, and his daughter, prior to his death, refused to have "filial and social relations with him." *Id.* at 547.

In ruling in favor of the executors, the court stated: "[i]ndeed there was a wish of the decedent expressed on at least two occasions to be buried in the mausoleum of his grandfather. This wish must be honored unless there are present overriding considerations which would neutralize his desires." *Id.* at 550. The court found no present overriding considerations.

In *Tkaczyk v. Gallagher*, 26 *Conn.Supp.* 290, 222 *A*.2d 226 (Sup.Ct.1965), *appeal dismissed*, 153 *Conn.* 744, 220 *A*.2d 163 (1966), a contest between decedent's husband and parents over the dispositions of decedent's remains resulted in a ruling in favor of decedent's husband. The decedent had expressed orally her desire to have her body cremated, which was "contrary to her early religious training." *Id.* 222 *A*.2d at 228.

The court noted that decedent had expressed her desires to her husband and a long-standing friend. In ruling in favor of decedent's husband, the court said: "[a] person's expressed wish or direction as to the disposal of her body after death is entitled to respectful consideration by the court and should be carried out as far as possible." *Ibid.*

 Although we conclude that a decedent's directions as to what to do with his or her remains may be expressed orally or in writing, the directions are not necessarily controlling. The plain language of the statute authorizes "a court of competent jurisdiction" to ultimately decide the disposition of a decedent's remains. *N.J.S.A.* 8A:5–18. Despite the authority of the court, however, the decedent's directions are "entitled to respectful consideration and are allowed great weight." *Guerin v. Cassidy*, 38 *N.J.Super.*

454, 458, 119 *A.*2d 780 (Ch.Div.1955). When a decedent's expressed intentions are challenged, "consideration must be given to the rights and feelings of those entitled to be heard by reason of relationship to, or association with, the decedent, such as his surviving spouse, relatives, and friends." Frank D. Wagner, Annotation, *Enforcement of Preference Expressed by Decedent as to Disposition of His Body After Death,* 54 *A.L.R.*3d 1037, 1044 (1974). Further, other interests may be considered in those cases that would require exhumation to comply with the decedent's expressed desires. *See id.* at 1045. We stress, however, that the expressed intention of the decedent should be carried out if it can be ascertained unless a valid reason not to comply is established.

 We deem it appropriate to comment briefly on the proofs that would be offered to establish decedent's intent. Much of it would constitute hearsay since the evidence would be "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *N.J.R.E.* 801(c). We are satisfied, however, that the statute authorizes admitting hearsay into evidence. If *N.J.S.A.* 8A:51–18 did not authorize hearsay, we perceive no way to convey a decedent's expressed intention to the court. In addition, *N.J.R.E.* 101(a)(2)(B) relaxes the rules of evidence to admit relevant and trustworthy evidence in accordance with a statutory provision. Moreover, in some cases the evidence of decedent's intentions would be admissible under *N.J.R.E.* 804(b)(6), provided that the conditions precedent were established.

In light of our holding, we deem it appropriate to reverse and remand for a trial on the issue of decedent's intentions.

Reversed and remanded.