896 So.2d 950 (2005)
Ivan COHEN and Cressie Carlyle, Appellants,
v.
GUARDIANSHIP OF Hilliard COHEN, Appellee.
No. 4D03-3923.
District Court of Appeal of Florida, Fourth District.
March 9, 2005.
*951 W. Sam Holland of Hinshaw & Culbertson, LLP, Fort Lauderdale, for appellants.
Clifford B. Hark and Laura Bourne Burkhalter of Hark & Associates, P.A., Boca Raton, for appellee.
WARNER, J.
The brother and sister of the deceased, Hilliard Cohen, appeal the probate court's order requiring the burial of the deceased in a Florida cemetery, where he could be buried next to his wife of forty years, instead of the family cemetery plot in New York. Hilliard's 1992 will contained a request to be buried in the family plot, but his wife and others testified that he wished to be buried in Florida where his wife could also be buried. Because we conclude that the provisions of the will are not conclusive, we affirm the court's refusal to enforce the burial instructions in the will under the evidence presented in this case.
Hilliard and Margaret Cohen were married for forty years at the time of his death. They had four children together, and she had two from a previous marriage. Hilliard was Jewish and Margaret was not. They celebrated some religious holidays with the family, but they did not belong to a temple, nor did the children regularly attend services. Hilliard never had a bar mitzvah ceremony. The Cohen family had a family plot in Mount Hebron Cemetery, a Jewish cemetery in New York, purchased by Hilliard's grandfather. All of Hilliard's family and their spouses were buried there. Hilliard and Margaret lived in New York until 1998 when they moved to Florida.
After relocating to Florida, Hilliard began to have health problems. Around 1999, Hilliard told Margaret that he wanted to be buried in his family plot in Mount Hebron with her. However, in May of 2001, when Hilliard went into the hospital, he and Margaret first discussed being buried together in Florida.
Hilliard's brother and sister, Ivan and Cressie, were close to him, but they did not have a good relationship with Margaret. As a result, Hilliard would visit with them in Arizona and New York after he moved to Florida. In February 2002, Ivan took Hilliard to a doctor in Arizona, who diagnosed him with dementia and Parkinson's disease. Later that year, while visiting Cressie in New York, he executed a durable power-of-attorney, naming Ivan as his agent. When Hilliard returned to Florida, Margaret would not allow Ivan or Cressie to see Hilliard, necessitating them to obtain a court order permitting visits.
In May of 2003, Margaret filed a petition to determine Hilliard's incapacity, alleging that Hilliard suffered from various diseases, including dementia and Alzheimer's. *952 A subsequent petition for appointment of a guardian was filed. In the course of those proceedings, Hilliard met with the attorney ad litem appointed to represent him. Hilliard told the attorney that he did not want a guardian but expressed no preference as to who should be appointed if he were declared incompetent. He also told the attorney that he was aware of the rift between his siblings and his wife and felt caught in the middle. A physician who examined Hilliard testified that during the examination Hilliard expressed the sentiment that he wished to be buried in Florida with his wife.
Ivan also filed a petition to be appointed Hilliard's guardian, based upon the durable power-of-attorney. However, while both petitions were pending, Hilliard died.
Shortly before Hilliard's death, Ivan produced a will that Hilliard had apparently executed in 1992 in New York, in which he directed that he be buried in "a traditional Jewish burial in our family plot in Mount Hebron Cemetery, Flushing, Queens, N.Y." In that will, he appointed Ivan as executor. The will also left only the statutory minimum to Margaret. Ivan testified that at the time Hilliard executed the will he was angry with Margaret because he believed she was having an affair. When Margaret found out about the will, she asked Hilliard about it. He denied ever executing a will, saying that he had signed something in New York regarding Cressie's house.
After Hilliard's death, Margaret planned to have Hilliard cremated, as they had discussed before his death. They chose cremation due to financial considerations and because Hilliard was angry with his brother. Prior to the cremation, Ivan sought a court order to enforce the burial provisions of the will. During a hearing to prevent the cremation, Margaret changed her mind after hearing a rabbi testify that it was against Jewish law. She then wanted a burial in Florida as they had discussed, where she could be by his side like she "ha[d] been the last forty years."
The trial court held two evidentiary hearings regarding the disposition and burial of the deceased. In addition to the testimony of Margaret, Ivan, and Cressie, a rabbi testified as to Jewish burial customs. He explained that: a) Cremation is prohibited under Jewish law and would not be considered a traditional Jewish burial; b) Jewish tradition is that husbands and wives are buried together as long as the wife is Jewish; c) Some Jewish cemeteries allow a non-Jew to be buried but not in the confined Jewish cemetery area; and d) More recent traditions allow Jews who are married to non-Jewish spouses to be buried in the same cemetery but not in the exclusive restricted area. The family plot in Mount Hebron was in the Jewish restricted area; therefore, Margaret could not be buried there. Finally, Hilliard's daughter testified that he had expressed a desire to be buried with his wife in Florida.
The trial court determined that the will was ambiguous as to Hilliard's intent because it stated that Hilliard wanted a "traditional Jewish burial," yet his wife could not be buried in Mount Hebron with him. Because the will was ambiguous, the court considered the extrinsic evidence and determined that Hilliard's true intent was to be buried alongside Margaret. The court therefore ordered Hilliard to be buried in the Florida cemetery.
This case presents an issue of first impression in Florida. The question presented is whether a deceased's testamentary burial instructions are binding upon the court or may be disregarded when the testator has made a subsequent oral statement of desire as to his final resting arrangements. The parties and the trial court considered the issue as though it was *953 necessary to find an ambiguity in the will in order to vary its terms by the oral statements of the deceased. We instead affirm the trial court's ruling, adopting the majority view that provisions in a will regarding burial instructions are not conclusive of a testator's intent, and the trial court may take evidence that the testator changed his or her mind regarding disposition of his body.
The common law recognized no property right in the body of a deceased. See Jackson v. Rupp, 228 So.2d 916, 918 (Fla. 4th DCA 1969). In the absence of a testamentary disposition, the spouse of the deceased or the next of kin has the right to the possession of the body for burial or other lawful disposition. Kirksey v. Jernigan, 45 So.2d 188, 189 (Fla.1950).
Where the testator has expressed his exclusive intention through the will, the testator's wishes should be honored. For instance, in Kasmer v. Guardianship of Limner, 697 So.2d 220 (Fla. 3d DCA 1997), the testator directed that his body be cremated. The executor of the will refused to follow that direction for reasons of conscience. The court concluded that the testamentary language was controlling, and the executor was required to fulfill the testator's directives. 697 So.2d at 221. However, Kasmer was not a case where the testator indicated a change of mind as to the disposition of his body subsequent to the execution of the will.
Looking to decisions of other states, whether to enforce the will provisions regarding disposition of the testator's body depends upon the circumstances of the case.
Having recognized certain property rights in dead bodies, many courts have announced the rule that a person has the right to dispose of his own body by will. However, courts, while paying lip service to the doctrine of testamentary disposal, have in certain instances permitted the wishes of the decedent's spouse or next of kin to prevail over those of the testator. In other instances, courts have accepted and acted upon evidence that indicated that the decedent's wishes concerning the disposition of his body had changed since the execution of his will.
B.C. Ricketts, Annotation, Validity and Effect of Testamentary Direction as to Disposition of Testator's Body, 7 A.L.R.3d 747 § 1[b] (1966) (footnotes omitted). Page on Wills states:
The states have differed as to whether such provisions [will provisions for the disposition of the testator's body] should be treated as binding upon the court and executor or as non-binding statements of desire which may be set aside and ignored by the surviving next of kin. The majority position appears to be that such provisions are not binding and that the next of kin have a superior right to determine the place and method of burial. In effect then, under this position, the dead body of the testator and its parts are not considered property which may be disposed of by will.
William J. Bowe & Douglas H. Parker, Page on Wills § 16.19 (3d ed. 1982).
Courts have held that a will provision directing the disposition of the testator's body may be altered or cancelled informally. See 7 A.L.R.3d 747 § 3(b). For instance, in Nelson v. Schoonover, 89 Kan. 779, 132 P. 1183 (1913), overruled on other grounds, Daum v. Inheritance Tax Commission of Kansas, 135 Kan. 210, 9 P.2d 992 (1932), the testatrix specified her burial location in her will, yet the court refused to enforce the provision because her husband stated that she had expressed a different desire. The court said:
Courts have sometimes been called upon to settle disagreements between relatives as to the place in which an interment *954 shall be made. In each of these cases such decision has been made as seemed most equitable under all the circumstances. Ordinarily the choice of a surviving spouse will prevail over that of the next of kin.... The statement in a will is practically conclusive evidence of the wish of the testator in this regard at the time of its execution, but should not control over a different desire, afterwards expressed, although shown only by oral evidence (citations omitted).
132 P. at 1185.
In In re Scheck's Estate, 172 Misc. 236, 14 N.Y.S.2d 946 (Sur.1939), a New York court considered whether a decedent's testamentary disposition of her body to be buried in Palestine, her home for a few years, should be disregarded when the evidence showed that she returned to the United States and purchased a cemetery plot in New York. A New York statute provided that a person has the right to direct the manner in which his body is disposed. 14 N.Y.S.2d at 948. The court discussed whether this direction must be by will, and if so, whether any change to such direction must be made through the same formalities as the execution of the will.
Concluding that the disposition of a body is not a property right, but a mere personal right to the testator, the court held that directions for disposition are "not testamentary in character to a degree which would require revocation of the direction to be accomplished in the manner [as prescribed by statute for the revocation of wills]. As noted, a dead body is not properly viewable as property or assets...." Id. at 951. The court determined that changes in the testator's intent could be considered:
An inevitable sequence of this conception is the right of a particular decedent, from time to time in his discretion, to vary the directions respecting disposal of his remains, with the result that the inquiry of the court must be directed to the ascertainment of the latest expression of wish by the testator on the subject.
Id. at 952. Because of the express provision of the will, however, the court demanded clear and convincing proof that a different disposition was the desire of the deceased. Id.
We have found no cases in Florida or across the country in which a testamentary disposition has been upheld even though credible evidence has been introduced to show that the testator changed his or her mind as to the disposition of his/her body. In Florida, as in New York, a will is construed to pass all property that the testator owns at death. See § 732.6005(2), Fla. Stat. As set forth above, the testator's body is not considered property. Therefore, just as in New York, a directive in a will regarding the disposition of a body does not have the same force and effect as do provisions directing the disposition of property. We therefore conclude that a testamentary disposition is not conclusive of the decedent's intent if it can be shown by clear and convincing evidence that he intended another disposition for his body.
To hold otherwise could cause untoward results. Nelson v. Schoonover is an example. There, the wife had resided in Ohio when her will was made but subsequently moved to Kansas with her husband. Obviously, burial in Ohio would have taken her away from her family. A more common occurrence might be the execution of a will during marriage indicating a burial location with the spouse. A subsequent divorce would make following such a direction impractical and not in accordance with the testator's intent.
Our current society is exceedingly mobile. One might live in several states during *955 a lifetime. A provision made in a will that is not revisited for many years may not reflect the intent of the testator as to the disposition of his or her remains. A direction for the disposition of one's body should not be conclusive when contrary and convincing oral or written evidence of a change in intent is present.
In this case, the deceased executed a will in 1992 requesting burial in his family's plot in New York. However, six years later he and his wife moved to Florida. He spoke of burial plans with his wife, as well as his daughter, and expressed a desire to be buried with his wife. At first, he wished to be buried with her in New York. Later, he agreed to burial with her in Florida. Hilliard's desire was also expressed to a doctor who examined him. Although his statement to the doctor may be discounted because he was being examined for competency, it was consistent with his prior statements that he wished to be buried with his wife. In all of his verbal expressions on this matter, Hilliard expressed a desire for burial in a place where his wife of forty years could also rest upon her death. This could not occur if he were buried in the family plot in Mount Hebron.
The trial court heard the evidence and weighed its credibility. "It is not the function of an appellate court to substitute its judgment for that of the trial court by reevaluating the evidence presented below." State v. Melendez, 392 So.2d 587, 590 (Fla. 4th DCA 1981). The trial court was aware of the heavier burden to disregard an express term of the will. Even where the standard that must be met is a clear and convincing evidence standard, "[O]ur task on review is not to conduct a de novo proceeding, reweigh the testimony and evidence given at the trial court, or substitute our judgment for that of the trier of fact." In re Adoption of Baby E.A.W., 658 So.2d 961, 967 (Fla.1995). A trial court's determination will be upheld if it is supported by competent, substantial evidence. Id.
It is a sorrowful matter to have relatives disputing in court over the remains of the deceased. In this case in particular, there is no solution that will bring peace to all parties. We express our sympathies to both sides in their loss, which must be magnified by these proceedings. Cases such as this require the most sensitive exercise of the equitable powers of the trial courts. We are confident that the experienced trial judge exercised his power with due regard for the serious and emotional issues presented. We find no abuse of the discretion afforded to the trial court.
Affirmed.
POLEN and HAZOURI, JJ., concur.